**Shideh SHARIFI, as Independent Executor of the Estate of Gholamreza Sharifi, also known as George Sharifi, Individually and d/b/a AAMCO Transmission Repair Center, Appellant,**

v.

**STEEN AUTOMOTIVE, LLC, Appellee.**

No. 05–10–01150–CV.

Court of Appeals of Texas, Dallas.

June 14, 2012.

Shideh Sharifi, Shafari Law Firm, P.C., Dallas, TX, pro se.

John J. Diggins, John J. Diggins, P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

In this contract case, appellant ("Sharifi")[1] appeals from a judgment granted in favor of appellee Steen Automotive, LLC ("Steen LLC"). Steen LLC claimed damages arising from breach of an agreement to sell Steen LLC Sharifi's transmission repair business. The trial court granted Steen LLC's motion for summary judgment as to liability. Following a bench trial as to damages and attorney's fees, the trial court signed a final judgment awarding Steen LLC $111,878 in damages and $135,000 in attorney's fees.[2]

In five issues on appeal, Sharifi challenges the trial court's summary judgment ruling and the awards of damages and attorney's fees. For the reasons below, we modify the trial court's judgment and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In its "Second Amended Original Petition,"[3] Steen LLC asserted it was suing "in its own right and as Assignee of JOHN F. STEEN, an Individual and STEEN AUTOMOTIVE, INC." ("Steen, Inc.") (emphasis original). Steen LLC alleged that on approximately January 13, 2005, Steen, Inc., a Texas corporation, entered into a contract (the "Agreement") to purchase a transmission repair business in Dallas, Texas, that was owned and operated by George Sharifi pursuant to a franchise agreement with AAMCO Transmissions, Inc. ("ATI"). Under the Agreement, Sharifi agreed to sell to Steen, Inc. "all of the fixtures, stock in trade, good will and other assets" of the business for a purchase price of $350,000. Of that purchase price, $250,000 was to be paid in cash and $100,000 was to be financed by a secured note payable to Sharifi over five years at 6% interest. The Agreement stated it was contingent upon ATI's approval of Steen, Inc. as a franchisee.

Several provisions of the Agreement are of particular relevance in this appeal.

1. Paragraph 3 of the Agreement, titled "Closing Date," stated

Subject to the conditions precedent in this Agreement having been satisfactorily performed and the preparation and attachments of the referenced exhibits, Closing shall take place no later than *March 25th, 2005* (Closing Date"). BOTH PARTIES AGREE TO USE A

---

1. This suit was originally filed against "Gholamreza Sharifi, also known as George Sharifi, Individually and d/b/a AAMCO Transmission Repair Center." The record shows George Sharifi died December 6, 2007, prior to the trial court's final judgment. "Shideh Sharifi, as Independent Executor of the Estate of Gholamreza Sharifi, also known as George Sharifi, Individually and d/b/a AAMCO Transmission Repair Center," was substituted as the defendant and is the appellant in this appeal.

2. Additionally, the trial court awarded Steen LLC $40,000 in attorney's fees in the event of an unsuccessful appeal by Sharifi to the court of appeals and $35,000 in attorney's fees in the event of an unsuccessful appeal by Sharifi to the Texas Supreme Court. Those attorney's fees are not at issue in this appeal.

3. Steen LLC's "Second Amended Original Petition" was the live petition with respect to both the trial court's summary judgment ruling and the trial court's final judgment in this case.

THIRD PARTY, *LAWYERS ESCROW & TRUST COMPANY, OF DALLAS TEXAS,* AS THE CLOSING ATTORNEY TO CREATE THE CLOSING DOCUMENTS PROVIDED SAID CLOSING DOCUMENTS SHALL COMPLY WITH THE EXHIBITS HERETO.

The exact time, date and place of closing shall be determined by BUYER upon seven (7) days advance written notice to SELLER.

(emphasis original).

2. Paragraph 12(d) of the Agreement provided that as a "condition precedent to the sale," Steen, Inc. agreed to complete, at its own expense, a required training course conducted by ATI.

3. Paragraph 19(c) of the Agreement stated

SALE IS CONTENGENT [sic] ON THE PARTIES HERETO REACHING AGREEMENT ON A PROPERTY LEASE FOR FIVE (5) YEARS. SAID LEASE SHALL BE, IN ADDITION TO OTHER TO BE AGREED MATTERS, A TRIPLE NET–LEASE OF THE LAND AND BUILDING, (THE "FACILITY"), WITH TWO ADDITIONAL FIVE(5) YEAR OPTIONS TO RENEW. THE RENT FOR THE FIRST TWO (2) YEARS OF THE LEASE SHALL BE NO MORE THAT [sic] $5,670 PER MONTH AND THEN INCREASED TO $6,000 PER MONTH FOR THE NEXT THREE(3) YEARS. THE RENT FOR EACH OF THE TWO SUCCESSIVE FIVE(5) YEAR OPTIONS WILL BE AT THE THEN PREVAILING MARKET RENT FOR SIMILAR USE FACILITIES IN THE SAME AREA, WHICH IF INCREASED WILL NOT EXCEED TEN PERCENT OF THE PREVIOUS BASE OR OPTION PERIOD.

(emphasis original).

4. Paragraph 20 of the Agreement stated, "EXHIBITS A, B, C, D, E, F, AND G ARE BY THIS REFERENCE INCORPORATED HEREIN BY REFERENCE." (emphasis original).

Steen LLC asserted that "Plaintiff John. F. Steen fulfilled all the requirements set forth in the [Agreement]," obtained all requisite training, and received ATI's approval as a franchisee. Further, Steen LLC contended it and Sharifi "agreed that the closing would be on March 25, 2005 at 10:00 a.m. at the offices of Lawyers Escrow & Trust Co. in Dallas, Texas." According to Steen LLC, "John Steen as President of Steen Automotive, LLC and Laser Automotive, Inc. (Successor in interest by name change to Steen Automotive, Inc.) appeared at the closing on March 25, 2005 at 10:00 a.m., signed all the closing documents and tendered the requisite purchase price in the form of cash and a promissory note."[4] Steen LLC asserted that Sharifi "failed to appear at the Closing" and thus "breached the [Agreement] and is in default." Additionally, Steen LLC asserted in its petition that (1) all conditions precedent have been performed or have occurred and (2) "any notice requirement by Plaintiff to Defendant regarding Closing has been performed or has been waived."

Pursuant to its claim for breach of contract, Steen LLC contended it is entitled to recover (1) "lost profits from failure to obtain a viable, profitable Aamco franchise under the benefit of the bargain rule of damages"; (2) "reliance and consequential damages"; and (3) "reasonable and necessary attorney's fees."

4. The record shows "John F. Steen" and "John Steen" are the same person.

In his "First Amended Answer," Sharifi asserted a general denial and the following affirmative defense:

Defendant asserts the affirmative defense that conditions precedent have not been performed by Plaintiff's failure to reveal to the Court other material and relevant conditions precedent and contingencies in the Agreement, which are:

(i) Paragraph 2, manner of payment of Purchase Price, last paragraph on page 1 of the Agreement: "Provided, however that all payments due hereunder shall be placed in escrow until SELLER complies in full with the provisions of paragraphs 8(f), 8(g), and 12(b) hereof."

(ii) Paragraph 3: "The exact time, date and place of closing shall be determined by BUYER upon seven (7) days advance written notice to SELLER."

(iii) Paragraph 8(f): Inter Shop and Warranty Program: "SELLER agrees to pay all outstanding money owed under [ATI's] Inter shop Warranty Program as of the Closing Date. SELLER further agrees to pay all outstanding money owed to ATI or its representative under the AAMCO Warranty program."

(iv) Paragraph 12: Contingencies: "(b) It is further understood and agreed that in no event shall ATI issue a Franchise Agreement to BUYER until all the indebtedness of SELLER to ATI, National Creative Committee, Bell Agency, and other AAMCO dealers is paid in full, as well as, all liabilities owed to SELLER'S local advertising pool and advertising agency."

(emphasis original).

Steen LLC filed a traditional motion for summary judgment on its breach of contract claim in which it contended in relevant part that the "notice provision" as to closing in paragraph 3 of the Agreement "is not a condition precedent but rather a covenant" and, regardless, such provision "was waived by Defendant as well as complied with by Plaintiff." Further, Steen LLC asserted in its motion for summary judgment that it had "performed all conditions precedent, covenants and obligations" under the Agreement.

The evidence attached to Steen LLC's motion for summary judgment included, in part, (1) a purported copy of the Agreement; (2) an August 19, 2006 affidavit of John F. Steen and exhibits attached thereto, including assignments pertaining to this cause of action; and (3) an August 10, 2006 affidavit of Bob McDowell, owner of McDowell Business Associates, and exhibits attached thereto. John F. Steen stated in relevant part in his affidavit that he formed Steen, Inc. in January 2005 for the purpose of acquiring and operating the business to be purchased from Sharifi. Additionally, John F. Steen testified in his affidavit

10. ... Shortly thereafter it occurred to me that a Limited Liability Company would be more beneficial for this business purpose so I decided to change the business forum from a Corporation to a LLC.... Then I formed Steen Automotive, LLC with a view to using it to purchase and operate my anticipated new AAMCO franchise. I then ask [sic] the Defendant's agent, Bob McDowell to obtain Mr. Sharifi's approval to this minor change in our Agreement. Mr. McDowell stated that initially Mr. Sharifi objected to the change, but when he (Bob McDowell) reminded Mr. Sharifi that nothing would change with regard to the personal guarantee of the note and lease, Mr. Sharifi told Mr. McDowell that the change would be acceptable and that he would initial the change from "Inc." to "LLC" at closing....

11. On or about July 6, 2006 I individually and as president of the former com-

pany known as Steen Automotive, Inc. assigned all our right title and interest in this litigation to Steen Automotive, LLC.

(citations to exhibits omitted).

McDowell testified in his affidavit that he was Sharifi's "broker and agent" for the sale of the business in question. Further, McDowell stated

> On or about January 30, 2005, John Steen advised me that he wanted to change the form of the purchasing or buying entity from a Corporation to a LLC.... He asked me to have George Sharifi initial the changes on the Agreement to reflect this. I immediately contacted Mr. Sharifi by telephone and discussed this change with him.... Mr. Sharifi stated it would not be a problem. Mr. Sharifi advised me he did not want me to have to come down to the business to initial the change, rather "we could initial the adjustments to the Agreement of Sale at the closing."

Additionally, McDowell testified (1) "[o]n or about March 10, 2005 Mr. Sharifi specifically agreed that the closing of the sale of his AAMCO franchise would occur on March 25, 2005" at 10:00 a.m. at "Lawyers Escrow and Trust" and (2) "I, as Mr. Sharifi's agent, had authority to issue such notice of the date and time of the closing to all parties, which I did." Exhibit 4 to McDowell's affidavit was a printed copy of a March 10, 2005 email from McDowell to Steen LLC's attorney and a representative of "Lawyer's Escrow" confirming the date, time, and place of closing.

Sharifi filed a response to Steen LLC's motion for summary judgment, contending in relevant part that the motion should be denied because "[t]here are genuine issues of material fact arising from the [Agreement]: (i) whether or not the Defendant (Seller) breached the [Agreement]; and (ii) whether all the contractual contingencies and conditions precedent in the Agreement were satisfied prior to Closing." Specifically, Sharifi listed the four "conditions precedent and contingencies" alleged in his first amended answer and asserted that because none of those four "conditions precedent and contingencies" occurred before the "contemplated Closing Date of March 25, 2005," no closing could occur on that date. Additionally, Sharifi contended the exhibit attached to the motion for summary judgment that was purported to be the Agreement by Steen LLC "is incomplete and does not have attached thereto any of the written exhibits referenced in paragraph 20 of the Agreement, thereby presenting an incomplete Agreement to the Court to consider" and thus raising genuine issues of material fact based on the "Doctrine of Completeness."

Evidence attached to Sharifi's response to the motion for summary judgment included a June 7, 2007 affidavit of George Sharifi in which he stated in part

2. I do not dispute that I and Steen Automotive, Inc. executed a valid and enforceable contract, referred to as the "Agreement of Sale" dated January 13, 2005.

3. However, the Agreement never had attached thereto any of the written exhibits referenced in paragraph 20 of the Agreement. I was unaware of the particulars of the Exhibits and therefore could not agree to them until I had received and read the proposed drafts of the contemplated Exhibits.

. . . .

8. I understood that contractually I had a duty to fully pay and satisfy any and all of my AAMCO financial obligations that I actually owed to ATI as a condition precedent to the sale of my Business.

9. [AAMCO] waited until March 22, 2005, just three days before the alleged Closing Date of March 25, 2005, to notify me of their alleged "financial obligations" that I was supposed to owe in the amount of Eight–Five Thousand Three Hundred Twelve Dollars and Thirty–Three Cents ($85,312.36), that must be fully paid and satisfied before Closing.

10. I knew I did not owe $85,312.36 to AAMCO and I challenged the amount they claimed I owed them.

. . . .

13. As a direct result of AAMCO's demand for full payment of falsified outstanding "financial obligations" and AAMCO's and the Buyer's refusal to satisfy or complete other conditions precedent in the Agreement of Sale, I was not able to determine the exact time, date and place of Closing on the sale of my Business to Steen Automotive, Inc. or to John F. Steen, Jr. in any other capacity.

In Steen LLC's reply to Sharifi's response, Steen LLC asserted with respect to the exhibits referenced in paragraph 20 of the Agreement that (1) "[t]he Court can easily determine that the attachments are not relevant to the determination of whether or not there was a breach of contract" and (2) "all of the attachments were, in fact, prepared and available for signature at the Closing on or before March 25." As to the alleged conditions precedent, Steen LLC contended the disputed obligations listed by Sharifi in his response were not conditions precedent and, regardless,

Sharifi (1) "cannot unilaterally not perform his obligations under the contract and then state that because he didn't perform his obligations he was therefore entitled not to perform additional obligations, to wit: attend the Closing" and (2) "waived any obligation the Plaintiff had to formerly present to the Defendant seven (7) days advance notice of the Closing" because Sharifi agreed to the date, time, and location of closing and "instructed his own agent to confirm with Plaintiff the exact date and time of the Closing." Attached to Steen LLC's reply was an exhibit consisting of a purported "true and correct copy of the closing exhibits." After a June 15, 2007 hearing on Steen LLC's motion for summary judgment, the trial court granted summary judgment in favor of Steen LLC as to liability on November 17, 2008, but reserved the issues of damages and attorney's fees for trial.[5]

During the subsequent bench trial, the exhibits admitted into evidence included excerpts from a videotaped deposition of George Sharifi, who was deceased at the time of trial. In his deposition, George Sharifi testified in relevant part (1) at the time he entered into a listing agreement with McDowell in 2004 for the sale of the business in question, he provided McDowell with "numbers" pertaining to the business from his own records and those numbers were correct; (2) based on those numbers, a purchaser could expect to earn a profit of $106,200 per year from operating the business; and (3) that figure of $106,200 "is close and could be more, could be less." Additionally, a document con-

---

**5.** On November 1, 2007, and December 7, 2007, respectively, Sharifi filed a second amended answer and a supplemental response to Steen LLC's motion for summary judgment. The record is silent as to whether the trial court granted leave as to the filing of those documents. *See* TEX.R. CIV. P. 166a(c) (except on leave of court, response of non-movant must be filed not less than seven days prior to hearing and pleadings to be considered by court are those on file at time of hearing). Additionally, Sharifi filed a November 1, 2007 motion to reopen Steen LLC's motion for summary judgment. Sharifi's motion to reopen was denied by the trial court.

taining the numbers provided by George Sharifi to McDowell was admitted into evidence.

John F. Steen and McDowell testified as to John F. Steen's business experience and factors affecting the profitability of the business. Further, John F. Steen testified (1) he incurred expenses of $5,478 for the required Aamco training course completed by him and (2) after the alleged breach, he purchased a "startup" Aamco business in Florida that did not earn a profit during the time it was owned by him and was subsequently sold by him at a loss. Finally, Shideh Sharifi, a daughter of George Sharifi, testified the Aamco business owned by her father had no net profit in 2005, 2006, 2007, or 2008.

On the issue of Steen LLC's attorney's fees, testimony was presented by Steen LLC's attorney, John Diggins, and two attorneys who had previously represented Sharifi in this litigation. The attorneys who had represented Sharifi testified that their fees for that work totaled approximately $81,500. Diggins testified his hourly rate is $200–$300 per hour and reasonable attorney's fees for his work in this litigation from its inception in May 2005 to date totaled $127,965. Additionally, Diggins testified that a reasonable fee for his work relating to this matter prior to litigation was $12,900.

Subsequent to the final judgment in this case, the trial court issued findings of fact and conclusions of law on damages and attorney's fees that included, in relevant part, the following:

### FINDINGS OF FACT

. . . .

4. Based upon actual historical data Defendant represented that the annual profit Plaintiff could expect to earn was $106,200.00 each year.

. . . .

8. Plaintiff incurred attorney's fees for the trial of this matter in the amount of $133,990.85.

9. Plaintiff also incurred pre-litigation closing costs in the nature of attorney's fees in the amount of $12,650.00.

### CONCLUSIONS OF LAW

1. Plaintiff is entitled to damages for lost profits in the amount of $106,400.00.

2. Plaintiff is entitled to additional damages for training expenses in the amount of $5,478.00.

3. Plaintiff is entitled to reasonable and necessary attorney's fees expended in this case in the amount of $135,000.00.

This appeal timely followed.

## II. SUMMARY JUDGMENT AS TO LIABILITY

In his first issue, Sharifi contends the trial court erred by granting Steen LLC's traditional motion for summary judgment on its breach of contract claim because Steen LLC failed to establish it is entitled to summary judgment as a matter of law. In three subparts under that issue, Sharifi asserts (a) a valid contract did not exist between Steen LLC and Sharifi; (b) the Agreement was not introduced as summary judgment evidence in its entirety and therefore Steen LLC was precluded from establishing the existence of a valid contract as a matter of law; and (c) Steen LLC failed to show all conditions precedent had been satisfied.

### A. Standard of Review

We review de novo the trial court's grant of a motion for summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). Summary judgment "shall be rendered forthwith if (i) the deposition transcripts,

interrogatory answers, and other discovery responses referenced in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX.R. CIV. P. 166a(c).

When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action as a matter of law. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). If the movant conclusively establishes its cause of action, the burden shifts to the nonmovant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *Rhône–Poulenc, Inc.*, 997 S.W.2d at 222–23. In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 215. Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007).

██ "A nonmovant need not answer or respond to a motion for summary judgment to contend on appeal that the grounds expressly presented by the movant's motion are insufficient as a matter of law to support summary judgment; however, the nonmovant may not raise on appeal any other issues as grounds for reversal." *Shih v. Tamisiea*, 306 S.W.3d 939, 944 (Tex.App.-Dallas 2010, no pet.) (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678). "In other words, except to attack the legal sufficiency of the movant's grounds for summary judgment, the nonmovant must expressly present to the trial court in a written answer or response to the motion any reason for avoiding the movant's entitlement to summary judgment." *Id.; see* TEX.R. CIV. P. 166a(c)

██ When, as here, the trial court does not specify the basis for its summary judgment, we affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See, e.g., McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467 (Tex.App.-Dallas 2009, pet. denied).

### B. Applicable Law

██ "A successful breach of contract claim requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex.App.-Dallas 2008, no pet.). The following elements are required for the formation of a valid contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex.App.-Dallas 2006, pet. de-

nied). Whether an alleged agreement constitutes an enforceable contract is generally a question of law, which we review de novo. *See, e.g., Effel v. McGarry,* 339 S.W.3d 789, 793 (Tex.App.-Dallas 2011, pet. denied); *Mickens v. Longhorn DFW Moving, Inc.,* 264 S.W.3d 875, 880 (Tex. App.-Dallas 2008, pet. denied).

Likewise, the interpretation of an unambiguous contract is a question of law and is reviewed de novo. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999). Our primary objective in construing a written contract is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). The parties' intent must be taken from the agreement itself, and the agreement must be enforced as written. *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.,* 194 S.W.3d 723, 726 (Tex.App.-Dallas 2006, pet. denied). Unless the agreement shows that the parties used a term in a technical or different sense, we give the terms their plain, ordinary, and generally accepted meaning. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996).

### C. Analysis

#### 1. Contract Between Steen LLC and Sharifi

In subpart (a) of his first issue, Sharifi asserts there "never was" an agreement between him and Steen LLC, which Sharifi argues is "the only Plaintiff in this lawsuit." Rather, Sharifi contends, the Agreement is between Sharifi and Steen, Inc. According to Sharifi, any oral modification of the Agreement respecting a change of buyer was barred by the statute of frauds. Additionally, Sharifi asserts that any purported assignment of the Agreement from Steen, Inc. to Steen LLC was (1) "contrary to law because of the Agreement's earnest money component," and (2) "did not take place until July 6, 2006, over a year past the March 25, 2005, alleged closing deadline." Thus, Sharifi argues, there is no "privity" between Sharifi and Steen LLC, and Steen LLC cannot prove the first element of its breach of contract claim. Further, Sharifi contends there was no "meeting of the minds or mutual assent" as to him and Steen LLC. Finally, Sharifi asserts none of the closing documents were signed by Steen, Inc. Thus, Sharifi contends, Steen LLC failed to conclusively establish that the "real party to the contract, Steen Automotive, Inc." performed under the contract by executing the closing documents. During oral argument before this Court, Sharifi characterized this issue as one of "standing" that can be raised at any time.

Steen LLC responds that Sharifi has waived his "standing challenge" because it was not asserted in his first amended answer, which was his live pleading at the time of the summary judgment hearing, or in his response to the summary judgment motion. Further, Steen LLC asserts this case does not involve an assignment of the Agreement, but rather rights and claims relating to the Agreement, which are assignable under the law. Additionally, Steen LLC contends that had Sharifi appeared at the closing and objected to Steen Automotive, LLC signing the closing documents, John F. Steen, who was present at the closing, "could have signed them as President of Steen Automotive, Inc."

Standing is a jurisdictional issue that cannot be waived and may be raised at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993). In order to establish standing to maintain a breach of contract

action, a plaintiff must show either third-party beneficiary status or privity. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex.App.-Dallas 2007, pet. denied). For purposes of standing, a plaintiff can establish privity by proving the plaintiff was assigned a cause of action under a contract to which the defendant was a party. *Id.*

The evidence attached to Steen LLC's motion for summary judgment included a July 6, 2006 assignment of Steen, Inc.'s "right, title, and interest" in this cause of action to Steen LLC. Sharifi does not contend, and the record does not show, the assignment of this cause of action is invalid. Therefore, we cannot agree with Sharifi's contention that Steen LLC lacks "standing." *See id.*

Further, the uncontroverted summary judgment evidence in the record shows that in January 2005, Sharifi orally agreed to the changing of the purchasing entity in the Agreement from Steen, Inc. to Steen LLC and that Sharifi's agent, McDowell, informed John F. Steen of Sharifi's agreement. Although Sharifi argues on appeal that any oral modification of the Agreement respecting a change of buyer was barred by the statute of frauds, Sharifi did not assert the statute of frauds in his live pleading at the time of the summary judgment hearing or in his response to the summary judgment motion. Accordingly, we cannot consider that argument on appeal as grounds for reversal. *See* Tex.R. Civ. P. 166a(c); *Shih*, 306 S.W.3d at 944; *see also Enserch Corp. v. Rebich*, 925 S.W.2d 75, 81 (Tex.App.-Tyler 1996, writ dism'd) (in absence of specific pleading of statute of frauds or, alternatively, general allegations that no oral agreements would be binding upon him, defendant could not invoke protection of statute of frauds against plaintiff on appeal of plaintiff's motion for summary judg-

ment). We decide against Sharifi on subpart (a) of his first issue.

### 2. Exhibits to Agreement

In subpart (b) of his first issue, Sharifi contends the Agreement "was not introduced as summary judgment evidence in its entirety and therefore [Steen LLC] was precluded from establishing the existence of a valid contract as a matter of law." According to Sharifi, "[t]he plain language of Paragraph 20 of the Agreement specifically refers to Exhibits A, B, C, D, E, F, and G which were incorporated by reference into the Agreement." Sharifi argues that "[w]ithout the entire contract and all of its terms on record, the court cannot determine its validity, its terms, and therefore its breach." Specifically, Sharifi asserts exhibits C and G were "never prepared," exhibit D "could not be identified," and exhibit A "was not contained in the record."

Steen LLC responds that the exhibits in question were "unnecessary for the Court to make the determination of whether or not [Sharifi] breached the Agreement by failing to appear at closing."

The material terms of a contract must be agreed upon before a court can enforce a contract. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992); *Effel*, 339 S.W.3d at 793. The question of whether a term is material is a legal one and we review it de novo, considering each contract on a case-by-case basis. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex.App.-Houston [14th Dist.] 2010, pet. denied); *see also T.O. Stanley Boot Co.*, 847 S.W.2d at 221. A contract is legally binding "if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000). "Where the parties

have intended to conclude a bargain, the agreement's silence as to non-essential, or collateral, matters is not fatal." *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex.App.-El Paso 2007, no pet.).

The record shows exhibit D is not mentioned in the Agreement and thus was not "incorporated herein by reference" pursuant to paragraph 20 of the Agreement. Therefore, Sharifi's argument as to exhibit D presents nothing for this Court's review. Further, the record shows (1) exhibit A is identified in the Agreement as a list of "equipment, furniture, and fixtures" included in the sale of the business; (2) exhibit C is identified in the Agreement as an allocation of the purchase price; and (3) exhibit G is identified in the Agreement as list of assumed contracts to be delivered by seller to buyer at closing. In support of his position that those exhibits were essential to the trial court's determination as to a breach, Sharifi cites two cases. *See Curlee Mfg. Co., Inc. v. Charter Oak Fire Ins. Co., Inc.*, No. B14–92–01298–CV, 1994 WL 222215, at *6 (Tex.App.-Houston [14th Dist.] May 26, 1994, writ denied) (not designated for publication) (where only a portion of insurance policy at issue was in record, insurer's obligation to reimburse insured could not be determined and insurer did not meet its summary judgment burden to prove as matter of law that insured had no right to reimbursement); *Miller v. Head*, 283 S.W. 886, 887 (Tex.Civ. App.-Eastland 1926, no writ) (where automobile owners alleged agent breached contract by issuing type of policy other than type agreed to, but "neither said policy nor the substance thereof" was in record, evidence was legally insufficient to support judgment in favor of automobile owners). However, both of those cases involved determination of coverage under insurance contracts and are therefore distinguishable on their facts. *See Parker Drilling Co.*,

316 S.W.3d at 74 ("Contracts should be examined on a case-by-case basis to determine which terms are material or essential.").

In the case before us, the Agreement, independent of the disputed exhibits, provides for a transfer of the business for a price of $350,000 by a specific closing date. Further, George Sharifi stated in his affidavit attached to his response to the motion for summary judgment that (1) he "was unaware of the particulars of the Exhibits" referenced in paragraph 20 and (2) he did not dispute that he executed a "valid and enforceable contract" with Steen, Inc. On this record, we conclude the Agreement did not lack material terms. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. We decide against Sharifi on subpart (b) of his first issue.

### 3. Conditions Precedent

In subpart (c) of his first issue, Sharifi asserts the trial court erred by granting summary judgment in favor of Steen LLC because Steen LLC failed to meet its burden to show eight conditions precedent had been satisfied. We address each alleged condition precedent, in turn, below. In response, Steen LLC argues (1) Sharifi has waived any conditions precedent that he did not specifically deny in his live pleading at the time of the summary judgment hearing and (2) Steen LLC "proved that [it] timely performed all conditions precedent required of [it]" in the Agreement.

A condition precedent may be either a condition to the formation of a contract or a condition to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). Thus, conditions precedent may relate to either the formation of contracts or to the liability

under them. *Id.* If there is a condition precedent to the formation of a contract, then no binding contract will arise until the specified condition has occurred or been performed. *See Fred v. Ledlow,* 309 S.W.2d 490, 491 (Tex.Civ.App.-San Antonio 1958, no writ); *Cont'l Transfer & Storage Co. v. Swann,* 278 S.W.2d 413, 415 (Tex. Civ.App.-Amarillo 1954, writ ref'd n.r.e.). On the other hand, conditions precedent to an obligation to perform are those acts or events which occur subsequent to the making of a contract and which must occur before there is a right to immediate performance and before there is a breach of a contractual duty. *Hohenberg Bros. Co.,* 537 S.W.2d at 3. A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998).

▪ Although no words in particular are necessary to create a condition, "such terms as 'if,' 'provided that,' 'on condition that,' or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise." *Hohenberg Bros. Co.,* 537 S.W.2d at 3. "In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties." *Id.* "However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, the agreement will not be interpreted as creating a condition." *Calce v. Dorado Exploration, Inc.,* 309 S.W.3d 719, 742 (Tex. App.-Dallas 2010, no pet.) (citing *Hohenberg Bros. Co.,* 537 S.W.2d at 3); *see also Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex. 1990) ("Because of their harshness in oper-

ation, conditions are not favorites of the law.").

Rule 54 of the Texas Rules of Civil Procedure provides

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

Tex.R. Civ. P. 54.

#### a. Property Lease

▪ First, we consider Sharifi's contention made in his opening brief, that one of the "conditions precedent" that has not been "met" is the necessity that the parties reach agreement on the terms of a property lease pursuant to paragraph 19 of the Agreement. Sharifi does not specify if agreement to the terms of a property lease is a "condition precedent" as to the formation of the contract or as to liability under it. *See Hohenberg Bros. Co.,* 537 S.W.2d at 3. However, in his reply brief on appeal, Sharifi asserts the Agreement "is not enforceable because it was contingent on Sharifi and Steen, Inc. reaching an agreement on a certain property lease, which agreement was never reached." Accordingly, we construe Sharifi's argument to assert that this condition relates to the formation of the Agreement, rather than to performance. *See Hohenberg Bros. Co.,* 537 S.W.2d at 3. We cannot agree with this position.

Neither party asserts the Agreement is ambiguous, nor do the parties dispute that the language of paragraph 19(c) is conditional. The first sentence of paragraph 19(c) states "SALE IS CONTENGENT [sic] ON THE PARTIES HERETO REACHING AGREEMENT ON A

PROPERTY LEASE FOR FIVE (5) YEARS." (emphasis original). That language does not, on its face, provide that an agreement on a property lease is a contingency to the formation of a contract. Rather, it is clear the "sale," not the Agreement, is contingent. That language contrasts with the language in paragraph 12(a), which states in part "It is hereby expressly understood and agreed that *this Agreement* is contingent upon the approval of its terms by ATI . . . ." (emphasis added). Further, the record shows the first line of paragraph 19, which was scratched out and initialed by the parties, originally stated, "ADDITIONAL BUYERS CONTINGENCIES: THIS CONTRACT IS EXPRESSLY CONTINGENT UPON THE FOLLOWING:" (emphasis original). On this record, we conclude the parties' intent as expressed in the Agreement is that the agreement respecting the property lease was a condition as to performance under the contract, rather than a condition as to formation of the contract. *See Hohenberg Bros.*, 537 S.W.2d at 3; *see also 1993 GF P'ship v. Simmons & Co. Int'l*, No. 14–09–00268–CV, 2010 WL 4514277, at *7 n. 13 (Tex.App.-Houston [14th Dist.] Nov. 9, 2010, no pet.) (mem.op.) (construing provision in recapitalization agreement as condition precedent to existing duty rather than condition precedent to formation of contract). Therefore, any lack of performance as to this condition did not preclude the formation of a binding contract. *See Hohenberg Bros.*, 537 S.W.2d at 3; *1993 GF P'ship*, 2010 WL 4514277, at *7 n. 13.

Finally, neither Sharifi's live answer at the time of the motion for summary judgment hearing nor his response to the motion for summary judgment included a denial of the performance of this condition. Accordingly, Steen LLC had no burden to prove this condition was satisfied. *See* TEX.R. CIV. P. 54, 166a(c).

b. Notice of Closing

Second, we consider Sharifi's contention that Steen LLC failed to satisfy the "condition precedent" in paragraph 3 of the Agreement because (1) Steen LLC did not "provide a written seven day notice of 'exact time, date and place of closing'" to Sharifi and (2) "there exists a genuine issue of material fact whether the title company and the title attorney referenced in the Agreement exist as a matter of law, making the 'place of closing' non-existent."

 The record shows the Agreement does not identify a "place of closing" in paragraph 3 or elsewhere. Therefore, we conclude Sharifi's argument that the "place of closing" is non-existent presents nothing for this Court's review. As to notice, Sharifi contends he was not required to perform under the Agreement because Steen LLC did not provide him "written" notice of the closing pursuant to paragraph 3. The language of paragraph 3 does not state in any way that Sharifi's performance was conditional on written notice of the closing. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3; *see also Moosavideen v. Garrett*, 300 S.W.3d 791, 799 (Tex. App.-Houston [1st Dist.] 2008, pet. denied) (concluding provision in lease agreement did not create condition precedent based on lack of conditional language). Further, paragraph 3 specifically provided the closing would take place no later than March 25, 2005. "[W]here the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, the agreement will not be interpreted as creating a condition." *Calce*, 309 S.W.3d at 742.

 Additionally, even had this been a "condition precedent," we cannot agree its performance was not satisfied. The record shows Sharifi's agent, McDowell, sent a March 10, 2005 email to Steen LLC's

attorney and a representative of "Lawyer's Escrow" stating the date, time, and place of closing. Thus, the record does not show Sharifi lacked seven days' written notice of that information. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex.1984) (knowledge acquired by agent is generally imputed to principal); *Latham v. Burgher*, 320 S.W.3d 602, 612 (Tex.App.-Dallas 2010, no pet.) (notice to agent is generally deemed notice to principal). Sharifi can hardly object to Steen LLC's failure to provide written notice stating all of the particular facts as to the closing when his own agent took on the responsibility to perform. *Cf. DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex.2008) (tender of performance should be excused when it would be a "useless act" or "idle ceremony"); *In re Lufkin Indus., Inc.*, 317 S.W.3d 516, 520 (Tex.App.-Texarkana 2010, orig. proceeding) ("[t]he law does not require a vain or useless act"). We conclude the written notice provision of paragraph 3 was not a condition precedent to Sharifi's performance under the Agreement. *See Calce*, 309 S.W.3d at 742; *see also Criswell*, 792 S.W.2d at 948 ("Because of their harshness in operation, conditions are not favorites of the law.").

### c. Seller's Payment of Debts Owed

 Third, we address Sharifi's argument that Steen LLC did not show satisfaction of the three "conditions precedent" in paragraphs 2, 8(f), and 12(b) of the Agreement. Pursuant to paragraph 2, all payments due under the Agreement were to be placed in escrow until Sharifi complied in full with the provisions of certain paragraphs that included 8(f) and 12(b). Under paragraph 8(f), Sharifi agreed to pay all outstanding money owed by him under ATI's "Inter shop Warranty Program" and all money owed by him to ATI or its representatives under the AAMCO Warranty Program. Paragraph 12(b) pro-

vided that "in no event shall ATI issue a Franchise Agreement" to buyer until all of seller's "indebtedness" to ATI and several other named entities is paid in full. Steen LLC asserts that Sharifi's argument that "since he did not perform his *own* conditions precedent he is excused from appearing at closing" (emphasis original) is "not only irrational but also is without any legal basis."

 The parties do not dispute that paragraphs 2, 8(f), and 12(b) of the Agreement created conditions precedent. However, the record does not show that the non-occurrence of those conditions precedent was due to anything other than Sharifi's choice not to perform. "It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance." *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex.App.-San Antonio 2001, pet. denied) (citing *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex.Civ.App.-San Antonio 1974, writ ref'd n.r.e.)); *see also Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex.App.-Dallas 2005, pet. denied) ("A duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract."). We cannot agree with Sharifi that his nonperformance as to the provisions in question precluded summary judgment.

### d. Other Conditions Precedent Not Denied by Sharifi

 Finally, we address the three remaining "conditions precedent" asserted by Sharifi on appeal. These include (1) "[w]ithout considering the entire agreement the court could not possibly identify all of the conditions precedent and there-

fore [Steen LLC] is precluded from asserting that all conditions precedent had been satisfied"; (2) the exhibits referenced in paragraph 20 of the Agreement were not finalized and "attached" as required by paragraph 3; and (3) the evidence does not show Steen, Inc. "performed its obligation by signing the closing documents." The record does not show these three "conditions precedent" were specifically denied by Sharifi in his live pleading at the time of the summary judgment hearing. On this record, we cannot agree with Sharifi that Steen LLC had the burden to prove these alleged conditions precedent were satisfied. *See* TEX.R. CIV. P. 54, 166a(c); *see also Hill v. Thompson & Knight,* 756 S.W.2d 824, 826 (Tex.App.-Dallas 1988, no writ) (plaintiff seeking summary judgment not required to prove conditions precedent not specifically denied by defendant).

We decide against Sharifi on his first issue.

### III. DAMAGES

In his second, third, and fourth issues, Sharifi contends the evidence is legally and factually insufficient to support the damages awarded in the bench trial.

#### A. *Standard of Review*

■■■ In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as jury findings. *See, e.g., Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991); *Walker v. Anderson,* 232 S.W.3d 899, 907 (Tex.App.-Dallas 2007, no pet.). Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Bundren v. Holly Oaks Townhomes Ass'n, Inc.,* 347 S.W.3d 421, 429–30 (Tex.App.-Dallas 2011, pet. denied); *Walker,* 232

S.W.3d at 907. When, as here, the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency of the evidence. *Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 52 (Tex.2003); *Las Colinas Obstetrics–Gynecology–Infertility Ass'n, P.A. v. Villalba,* 324 S.W.3d 634, 638 (Tex.App.-Dallas 2010, no pet.).

■■■ We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Darocy v. Abildtrup,* 345 S.W.3d 129, 136 (Tex.App.-Dallas 2011, no pet.). When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that no evidence supports the finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence presented at trial in the light most favorable to the fact-finder's findings, crediting evidence to that party if a reasonable fact-finder could and disregarding evidence unless a reasonable fact-finder could not. *Guevara v. Ferrer,* 247 S.W.3d 662, 665 (Tex.2007); *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). Anything more than a "scintilla of evidence" is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). To constitute more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence supporting and contradicting the challenged finding and set aside the finding only if it is so

contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *see Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Wright Grp. Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex.App.-Dallas 2011, no pet.). We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *Bundren*, 347 S.W.3d at 429–30; *Wright Grp. Architects–Planners, P.L.L.C.*, 343 S.W.3d at 199. We must uphold conclusions of law if "any legal theory supported by the evidence sustains the judgment." *Bundren*, 347 S.W.3d at 430 (quoting *OAIC Commercial Assets, L.L.C.*, 234 S.W.3d at 736 (internal quotation marks omitted)). We will reverse the trial court's judgment only if the conclusions of law are erroneous as a matter of law. *Id.*

### B. Applicable Law

■■■■ The ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex.App.-El Paso 2000, no pet.). By the operation of that rule, a party generally should be awarded neither less nor more than his actual damages. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). The facts of the case determine the proper measure of damages as well as any allow-ance offsets. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 n. 1 (Tex.1984); *Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 363 (Tex.App.-Dallas 1993, writ denied); *Abraxas Petroleum Corp.*, 20 S.W.3d at 760.

■■■■ Damages must be measured by a legal standard, and that standard must be used to guide the fact-finder in determining what sum would compensate the injured party. *Abraxas Petroleum Corp.*, 20 S.W.3d at 760; *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). "Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest." *Chung v. Lee*, 193 S.W.3d 729, 733 (Tex.App.-Dallas 2006, pet. denied) (citing *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 247 (Tex.App.-San Antonio 1998, pet. denied)); *see Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex.App.-Austin 1998, pet. denied).

■■■■ Expectancy damages, similar to benefit-of-the-bargain recoveries, award damages for the reasonably expected value of the contract. *Foley v. Parlier*, 68 S.W.3d 870, 884 (Tex.App.-Fort Worth 2002, no pet.); *see SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 317 n. 6 (Tex.App.-Dallas 2004, no pet.) (benefit-of-the-bargain measure of damages seeks to restore injured party to economic position it would have been in had contract been performed). To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it. *Lafarge Corp.*, 977 S.W.2d at 187. Under the ben-

efit of the bargain measure, lost profits on the bargain maybe recovered if they are proved through competent evidence with reasonable certainty. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 173 (Tex. App.-Dallas 2011, pet. denied). What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex.2010); *Szczepanik*, 883 S.W.2d at 649. It is not necessary that profits should be susceptible to exact calculation. *Hernandez*, 343 S.W.3d at 173. However, "[a]s a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Swinnea*, 318 S.W.3d at 876 (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992)); *accord Exel Transp. Servs., Inc. v. Aim High Logistics Servs., LLC*, 323 S.W.3d 224, 232 (Tex.App.-Dallas 2010, pet. denied). Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates. *Holt Atherton Indus., Inc.*, 835 S.W.2d at 84; *Hernandez*, 343 S.W.3d at 173.

On the other hand, a plaintiff in a breach of contract case may forego his lost profits and, instead, seek reliance damages. *See Lafarge Corp.*, 977 S.W.2d at 187 n. 11. Reliance damages, similar to out-of-pocket recovery, reimburse one for expenditures made towards the execution of the contract in order to restore the status quo before the contract. *Foley*, 68 S.W.3d at 884–85.

A plaintiff who has two inconsistent remedies must elect between them. *Id.* at 882. Remedies are inconsistent when one of the remedies results from

affirming the transaction and the other results from disaffirming the transaction. *Id.* "A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a 'double recovery.'" *Id.* (citing *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998)). A party cannot both "retain all the benefits of the transaction and escape all of the obligations." *Id.* at 885.

## C. Analysis

### 1. Lost Profits

In his second issue, Sharifi contends the trial court erred by awarding $106,400 in lost profit damages to Steen LLC because the award has no support in law or in fact. In three subparts to that issue, Sharifi asserts (a) the award of lost profits damages is not supported by any legally competent record evidence and is barred as a matter of law, (b) the evidence presented at trial in support of lost profits was factually insufficient to support the damage award, and (c) the trial court misapplied the benefit of the bargain damages formula since it failed to factor in the purchase price of the business. We construe this issue and its subparts as a challenge to the trial court's finding of fact number four and conclusion of law number one. We address this issue and its subparts together.

First, we address subpart (a) of Sharifi's second issue as a legal sufficiency point. The record shows George Sharifi, in his capacity as the owner of the business in question, testified in his deposition that in 2004 he provided McDowell with correct "numbers" pertaining to the business from his own records and, based upon those numbers, a purchaser could expect to earn a profit of $106,200 per year

from operating the business. Additionally, George Sharifi testified that figure "is close and could be more, could be less." Sharifi complains as to the lack of expert testimony respecting lost profits. However, generally, a property owner is qualified to testify to the value of his property even if he is not an expert. *Reid Road Mun. Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 852–53 (Tex. 2011) (citing *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984)). This rule is based on the presumption that an owner will be familiar with his own property and know its value. *Id.* at 853. "The owner of a business is likewise permitted to testify as to its value, if he has a basis of knowledge of the value of the business." *Ramex Constr. Co. v. Tamcon Servs., Inc.,* 29 S.W.3d 135, 138 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *accord Laprade v. Laprade,* 784 S.W.2d 490, 492–93 (Tex. App.-Fort Worth 1990, writ denied); *Tyre v. Yawn,* No. 01–08–00914–CV, 2011 WL 662957, at *7 (Tex.App.-Houston [1st Dist.] Feb. 17, 2011, no pet.) (mem. op.); *see also Corniello v. State Bank & Trust, Dallas,* 344 S.W.3d 601, 608 n. 2 (Tex.App.-Dallas 2011, no pet.) (where property owner rule applies, there is presumption owner is familiar with property and its value). Further, "[i]n proving a claim of 'lost profits,' if the business was not created by the contract in question then its profitability should be measured by the years preceding the breach." *Turner v. PV Int'l Corp.,* 765 S.W.2d 455, 465 (Tex.App.-Dallas 1988), *writ denied per curiam,* 778 S.W.2d 865 (Tex.1989). The record does not show George Sharifi lacked a basis of knowledge as to the value of his business. On this record, we conclude there was some evidence to support profits of approximately $106,200 per year from the business.

Next, we address Sharifi's challenges to the factual sufficiency of the evidence. Sharifi contends Steen LLC "ignored" the excerpt from George Sharifi's deposition in which George Sharifi "denied any unreported cash earnings" that would "pump up" the lost profit numbers. Further, Sharifi asserts (1) John F. Steen "personally failed at owning and managing another transmission shop within six months of purchasing one"; (2) the evidence does not show with any reasonable certainty that Steen LLC would have replicated the profit made by George Sharifi, who was "a small business owner with eleven years of experience running the Aamco at issue"; (3) McDowell testified that in March 2005 he told John F. Steen that, in contrast to Sharifi's success, "nearly every other franchisee of Aamco's in the D–FW are has failed"; and (4) Shideh Sharifi testified the business in question had no net profit in 2005, 2006, 2007, or 2008. However, the record shows John F. Steen testified he was a certified public accountant and had received Aamco training and certification in running a franchise and as a customer service manager. Further, he testified the Aamco business he purchased in Florida (1) was in a much smaller metropolitan area than the business in question; (2) was a "startup," rather than an established franchise; and (3) doubled its revenues under his management. The trial court, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller,* 168 S.W.3d at 819; *Wright Grp. Architects–Planners, P.L.L.C.,* 343 S.W.3d at 199. On this record, we cannot agree with Sharifi that the trial court's finding of fact number four is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176; *see also Plas–Tex, Inc.,* 772 S.W.2d at 445.

Finally, we consider Sharifi's contention that the trial court misapplied the benefit of the bargain damages formula

because it failed to factor in the purchase price of the business. According to Sharifi, "an award of $106,400.00 in lost profits is clearly outside the range of the evidence presented and has no support in fact or in law." The record does not show a specific lost profits calculation by the trial court. However, as described above, there was evidence in the record to support profits of approximately $106,200 per year from the business. Further, the Agreement referenced a property lease of at least a five-year duration. Thus, there was evidence in the record to support approximately $531,000 in profits ($106,200 × 5) before subtracting the purchase price of $350,000. Additionally, the Agreement provided that $100,000 of the purchase price was to be financed by a secured note payable to the seller over five years at 6% interest. The fact-finder has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *See Mays v. Pierce*, 203 S.W.3d 564, 578 n. 20 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) (court of appeals described how trial court could have arrived at damage award, but stated appellate court need not recreate the fact-finder's calculations in order to determine whether amount of actual damages awarded was within range of evidence presented at trial); *see also Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 108 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (concluding damage award was not outside range of evidence presented at trial, even where it was not clear how trier of fact arrived at figure); *cf. Hernandez*, 343 S.W.3d at 173 (it is not necessary that lost profits should be susceptible to exact calculation). On this record, we cannot agree with Sharifi that an award of $106,400.00 in lost profits is not supported by the evidence.

We decide against Sharifi on his second issue.

### 2. Double Recovery

In his fourth issue, Sharifi asserts the trial court erred by awarding Steen LLC both "out-of-pocket" damages and lost profits. Specifically, Sharifi asserts the trial court's award of both lost profits and "additional damages for training expenses" is "equivalent to a double recovery and is not permissible under Texas law." Steen LLC does not address this issue in its appellate brief.

The record shows that during trial, Steen LLC's counsel stated to the trial court that its "expectation" and "direct" damage theories were "in the alternative." Additionally, in a post-trial supplemental motion for summary judgment as to damages and attorney's fees, Steen LLC stated, "Expectation or benefit of the bargain damages and reliant damages would appear to be in conflict.... Here, if Plaintiff is required to choose his theory of damage he would of course choose or elect his expectation or benefit of the bargain damages as opposed to reliant damages." However, the trial court's conclusions of law numbers one and two show Steen LLC was awarded lost profit damages of $106,400, thus giving it the benefits it would have received had the Agreement been performed, and, in addition, was awarded reimbursement for an expenditure it made toward execution of the contract, i.e., its training expenses of $5,478. A party cannot both "retain all the benefits of the transaction and escape all of the obligations." *Foley*, 68 S.W.3d at 885. "A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a 'double recovery.'" *Id.* at 882. We conclude the trial court erred by awarding Steen LLC damages equivalent to a double recovery. *See id.*

Further, we conclude Steen LLC should receive, as stated in the trial court's conclusions of law, its "lost profits in the amount of $106,400.00," and should not be awarded additional damages for training expenses in the amount of $5,478. *See Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 811–13 (Tex.App.-Dallas 1987, no writ) (unless party has elected otherwise, "double recovery" award should be adjusted on appeal by subtracting smaller of two awards and rendering judgment on amount remaining); *Blackstock v. Dudley*, 12 S.W.3d 131, 135 (Tex.App.-Amarillo 1999, no pet.) (same); *cf. Dawson v. Garcia*, 666 S.W.2d 254, 264 (Tex.App.-Dallas 1984, no writ) (appellate court has power to render judgment it deems should have been rendered by trial court where it appears on face of record that modification in judgment should be made and justice requires it). We decide Sharifi's fourth issue in his favor.[6]

## IV. ATTORNEY'S FEES

In his fifth issue, Sharifi contends the trial court's award of $135,000 in attorney's fees is "not supported by competent evidence." In four subparts to that issue, Sharifi argues (a) an award of attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code is not supported by competent evidence; (b) an award of attorney's fees is not permissible under the terms of the Agreement; (c) an award of attorney's fees "as actual damages" is not permissible under Texas law; and (d) any award of $135,000 in attorney's fees was "unreasonable and a clear abuse of discretion" because any award of attorney's fees "must be in proportion to actual damages recovered."

### A. Standard of Review

Generally, we review a trial court's decision to award attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997); *Bundren*, 347 S.W.3d at 440. We review a trial court's determination respecting the amount of attorney's fees for legal and factual sufficiency of the evidence. *See Bocquet*, 972 S.W.2d at 21; *Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex.App.-Dallas 2008, pet. denied); *see also Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450 (evidence must constitute "more than a scintilla" to be legally sufficient); *Cain*, 709 S.W.2d at 176 (in reviewing factual sufficiency of evidence, we consider and weigh all evidence and set aside judgment only if it is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust).

### B. Applicable Law

 Well-settled law precludes awarding attorney's fees in the absence of contractual or statutory authority. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992). Under section 38.001(8) of the Texas Civil Practice and Remedies Code, a person may recover reasonable attorney's fees, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 2008). To recover under section 38.001(8), a party must (1) prevail on his cause of action and (2) recover damages. *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 315

---

6. In light of our disposition of Sharifi's fourth issue, we need not reach Sharifi's third issue, in which he asserts the "$5,478.00 award of 'out-of-pocket' expenses is not supported by competent evidence."

(Tex.App.-Dallas 2006, no pet.) (citing *Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 551 (Tex.App.-Dallas 1991, no writ)). Generally, the party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991).

The determination of reasonable attorney's fees is usually a question for the trier of fact. *Emerson Elec. Co.*, 201 S.W.3d at 317 (citing *Stewart Title Guar. Co.*, 822 S.W.2d at 12). However, a court may award attorney's fees as a matter of law when the testimony on fees is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 546 (Tex.2009).

In reviewing the reasonableness of an award of attorney's fees, the reviewing court should consider (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Bundren*, 347 S.W.3d at 441. Additionally, attorney's fees should generally bear some reasonable relationship to the amount in controversy. *Bundren*, 347 S.W.3d at 441; *Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606 (Tex.App.-Dallas 1990, no writ); *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 684 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). However, the amount of damages awarded is not the sole determining factor. *Emerson Elec. Co.*, 201 S.W.3d at 317 (citing *SAS & Assocs., Inc. v. Home Mktg. Serv., Inc.*, 168 S.W.3d 296, 304 (Tex.App.-Dallas 2005, pet. denied)). Further, there is no rule that fees cannot be more than actual damages. *Bundren*, 347 S.W.3d at 441 (citing *Murrco Agency*, 800 S.W.2d at 606–07; *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 209–10 (Tex.App.-Houston [14th Dist.] 2005, no pet.)).

### C. Analysis

First, Sharifi argues an award of attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code is not supported by competent evidence because "the record and relevant law in this case do not support a lost profit award, nor any out-of-pocket damages award." We concluded above that the evidence in the record supports the trial court's award of "lost profits in the amount of $106,400.00." Therefore, we cannot agree with Sharifi that attorney's fees under chapter 38 are precluded in this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8).

Second, Sharifi contends Steen LLC is barred by the Agreement from recovering any attorney's fees in this case because paragraph 14 of the Agreement states "EACH PARTY WILL PAY ITS OWN LEGAL, ACCOUNTING, AND CLOSING COSTS." (emphasis original). However, on its face, the Agreement addresses only the sale of the business and

does not address or purport to govern expenses incurred in subsequent litigation. We cannot agree with Sharifi that the Agreement bars recovery of attorney's fees incurred in litigation resulting from an alleged breach. *See Frost Nat'l Bank*, 165 S.W.3d at 311–12 (primary objective in construing written contract is to ascertain and give effect to intentions parties have objectively manifested in written instrument); *see also Wells Fargo Bank, Minn., N.A.*, 194 S.W.3d at 726 ("[t]he parties' intent must be taken from the agreement itself").

■ Third, Sharifi asserts Steen LLC *cannot recover the $12,900 in attorney's fees that it "incurred prior to Sharifi's alleged breach as out-of-pocket damages"* because "Texas law is unequivocally clear that attorney fees are not recoverable as actual damages." However, Sharifi states in his appellate brief "[t]he trial court awarded [Steen LLC] a total of $135,000.00 in attorney fees without an indication as to what portion of the award is attributable under Chapter 38 and which portion is awarded as out-of-pocket damages." Because Sharifi has cited us to nothing in the record that shows the trial court awarded any attorney's fees as "actual damages" and we can find nothing in that regard in the record, we conclude this argument presents nothing for this Court's review.

■ Finally, Sharifi contends Steen LLC "should not be awarded attorney fees which are well in excess of its ultimate recovery and entirely disproportionate to its relative success in this case." Sharifi asserts Steen LLC sought total lost profit damages of approximately $1.8 million and received an award of $106,400. According to Sharifi, the award of attorney's fees should be "reconsidered based on [Steen LLC's] relative success, by comparing the damages originally sought, to the damages

actually recovered." Steen LLC responds that "[t]he unique circumstances of this case vitiated the necessity of any relationship between an award and actual damages recovered."

The arguments of both parties focus on *Smith. See* 296 S.W.3d at 545. In that case, a trust that owned a shopping center sued the guarantors of a tenant's lease after the tenant stopped making payments. *Id.* at 546. The trust sought $215,391.50 in damages and $47,438.75 in attorney's fees. *Id.* A jury awarded the trust $65,000 in damages, but no attorney's fees. *Id.* On proper motion, the trial court rendered judgment notwithstanding the verdict on attorney's fees and awarded the trust $7,500 for attorney's fees incurred through trial and up to $15,000 in attorney's fees for success at various stages of appeal. *Id.* at 546–47. Both sides appealed to this Court. *Id.* at 547. This Court vacated the trial court's award of attorney's fees and rendered judgment for attorney's fees of $47,438.75 to the trust, concluding those fees were established as a matter of law. *Id.* The Texas Supreme Court granted the guarantors' petition for review. *Id.*

The supreme court stated that this Court correctly concluded no evidence supported the jury's refusal to award any attorney's fees. *Id.* at 548. However, the supreme court concluded the amount of attorney's fees awarded by this Court, though supported by uncontradicted testimony, "was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due [to] circumstances unique to this case." *Id.* Therefore, the supreme court concluded, those attorney's fees were not established as a matter of law. *Id.* Rather, the supreme court stated, the guarantors were entitled to a new trial on attorney's fees. *Id.* The supreme court added, "On retrial, the evi-

dence may support a similar fee award, but that is a matter within the jury's purview." *Id.*

In the case before us, Steen LLC argues *Smith* is distinguishable and not controlling. Specifically, Steen LLC asserts

[T]his case spanned five years, five defense attorneys (each with their own unique approach to representation), and three thousand plus pages of record. This alone should indicate a certain uniqueness for what otherwise might be a simple breach of contract matter. A good measuring standard would be the known attorney fees of approximately $82,000 for just two of the five defense attorneys involved in the case and for a limited time of less than two years.

Sharifi contends

Following [Steen LLC's] logic, any plaintiff and their attorney can pursue any claim, no matter how nominal, and over litigate the matter for as long as the parties' schedules and the court's docket will allow and collect a hefty and disproportionate sum for attorney fees at the end just because the case went on for a few years. [*Smith*] is intended to keep attorney fees in check and take away the plaintiff's incentive to run up litigation cost. In the case at bar, [Steen LLC] was in fact the Plaintiff in the lower court proceedings and for the most part controlled the pace of the case and determined the amount of defense work required.

The record shows Diggins, Steen LLC's attorney, testified his fees were reasonable and necessary in light of the "novelty and difficulty of the issues involved, the scope required in providing the legal services properly and the experience, reputation, and expertise with regard to performing— required to perform these services." Additionally, Diggins stated he considered "the time and labor involved to perform the legal services properly and the fee customarily charged in this community for similar services."

Sharifi does not explain how Steen LLC "controlled the pace of the case" and "determined the amount of defense work required," nor does Sharifi provide citations to the record to support those assertions. Further, while Sharifi challenged at trial Steen LLC's entitlement to pre-litigation attorney's fees, Sharifi presented no controverting evidence as to the amount of attorney's fees claimed by Steen LLC.

In reversing the attorney's fees award in *Smith,* the supreme court considered not only the "amount involved and the results obtained," but also "the absence of evidence that such fees were warranted due [to] circumstances unique to this case." *Id.; see also Emerson Elec. Co.,* 201 S.W.3d at 317 (amount of damages awarded is not sole determining factor as to reasonableness of attorney's fees). In this case, Diggins's testimony provided some evidence of circumstances warranting the fees in question. Further, there is no rule that attorney's fees cannot be more than actual damages. *See Bundren,* 347 S.W.3d at 441. On this record, we cannot conclude the evidence supporting the trial court's award of $135,000 in attorney's fees is legally or factually insufficient. *See Bocquet,* 972 S.W.2d at 21; *Brockie,* 244 S.W.3d at 909–10.

We decide against Sharifi on his fifth issue.

## V. CONCLUSION

We decide Sharifi's fourth issue in his favor. Sharifi's remaining issues are decided against him.

We modify the trial court's judgment to eliminate the trial court's award of "train-

ing expenses in the amount of $5,478.00" to Steen LLC and award Steen LLC actual damages of $106,400 rather than $111,878.

The trial court's judgment is affirmed as modified.