**Affirmed and Opinion Filed August 30, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01556-CV

**VAREL INTERNATIONAL INDUSTRIES, L.P.,
AND VAREL EUROPE, S.A.S., Appellants
V.
PETRODRILLBITS INTERNATIONAL, INC., Appellee**

**On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 11-00490**

## MEMORANDUM OPINION

Before Justices Lang, Brown, and O'Neill[1]
Opinion by Justice Lang

Varel International Industries, L.P., and Varel Europe, S.A.S., appeal the trial court's

final judgment awarding PetroDrillBits International, Inc., $214,421.32 in damages on its

breach-of-contract claim. Varel International and Varel Europe raise two issues on appeal,

arguing the trial court erred when it: (1) overruled their objection to the jury charge, and denied

their motions for directed verdict, judgment notwithstanding the verdict, and new trial because

the evidence is legally insufficient to support the jury's answer to question no. 6, awarding

PetroDrillBits damages on its breach-of-contract claim; and (2) the trial court erred when it

denied their motion for judgment notwithstanding the verdict on the jury's answer to question

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

no. 7 because, as a matter of law, chapter 38 of the Texas Civil Practice and Remedies Code does not allow recovery of attorneys' fees from a limited partnership (L.P.) or a société par actions simplifiée (S.A.S.).

We conclude the trial court did not err when it overruled Varel International and Varel Europe's objection to the jury charge and denied their motions for directed verdict, judgment notwithstanding the verdict, and new trial. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

All facts are stated as of the time of trial. Varel International and Varel Europe manufacture oilfield and mining drill bit products. James Nixon is the "president and CEO" of Varel International, which has its "corporate headquarters" in Carrolton, Texas. In August 2006, PetroDrillBits and Varel International entered into a Sales Technical Service Representation Agreement in which PetroDrillBits agreed to act as Varel International's authorized sales representative by providing sales and technical service to certain customers in Eastern Europe on a non-exclusive basis. Leslie Schreiber and David Schreiber are the only shareholders, officers, and employees of PetroDrillBits. Varel International agreed to pay PetroDrillBits commissions based on the "net selling price of oilfield and mining drill bit products." The contract had an initial term of twelve months, but renewed annually unless either party gave written notice of its intent to terminate the agreement no less than sixty days before the end of the then-current term or July 31st of each year.

Varel Europe is a wholly owned subsidiary of Varel International. Varel Europe's "corporate headquarters" are in Pau, France. Varel Europe handles the sale of Varel products in Europe, Asia, Africa, and the Middle East. Bernard Pontneau is the "president" of Varel Europe. At some point during the agreement, Varel International, PetroDrillBits, and Varel Europe agreed that PetroDrillBits would report to Varel Europe.

In April 2009, Alan Drane contacted Leslie Schreiber about an opportunity in Russia. As a result, Leslie Schreiber and David Schreiber met with Drane and Oktay Mamedbekov in Houston, Texas, to discuss an opportunity to sell Varel drill bits in Russia to a company that was going to be formed by Mark Sadykhov. Then, on April 30, 2009, the Schreibers met with Sadykhov, Drane, and Mamedbekov in Houston to discuss Varel supplying drill bits to Sadykhov's new company, which was subsequently named MMS Holdings Group, L.L.C. The Schreibers continued to meet with Sadykhov during the spring of 2009 to discuss Varel products and to provide product price sheets, product requirements, and technical services.

On May 12, 2009, Leslie Schreiber sent an e-mail to Pontneau to advise him of Sadykhov's new company and his interest in Varel drill bits for that company. As a result, in May 2009, Pontneau met with the Schreibers in Carrollton. In preparation for that meeting, Leslie Schreiber prepared a detailed memorandum, containing information about Sadykhov's drilling and service company, and stating that sales were anticipated to be approximately $1.6 million in fiscal year 2010 and $3–$4 million in fiscal year 2011.

In early June 2009, Leslie Schreiber and David Schreiber met with Sadykhov in Houston. At this point, Sadykhov wanted the Schreibers to meet his "operating people" in Moscow. As a result, in late June, the Schreibers met with Sadykhov's operations team in Moscow. PetroDrillBits paid the Schreibers' travel expenses. The Schreibers invited Pontneau to attend that meeting but he declined. Following the meeting in Moscow, PetroDrillBits arranged a meeting in Amsterdam so they could introduce Sadykhov to Pontneau. PetroDrillBits paid for the Schreibers' room and flights as well as the meeting room.

Throughout the summer, PetroDrillBits continued meeting with Sadykhov to discuss MMS's interest in Varel bits and technical services. At the end of July 2009, the Schreibers traveled to Pau for their regularly scheduled meeting with Pontneau where they anticipated

discussing the sales negotiations with MMS. PetroDrillBits rented a house for the Schreibers, purchased their airline tickets, and rented them a car. While en route to Pau, Leslie Schreiber received an e-mail stating that Pontneau could not meet with them.

In August 2009, Leslie Schreiber facilitated a meeting in Dallas for the purpose of introducing Sadykhov to Nixon. After this meeting, PetroDrillBits continued trying to reach an agreement with Sadykhov's company for the purchase Varel drill bits. However, PetroDrillBits began having difficulty reaching Pontneau or obtaining responses from him.

On September 10, 2009, Pontneau advised PetroDrillBits that he was terminating Varel International's agreement with PetroDrillBits at the end of the term and he no longer wanted PetroDrillBits to be involved with MMS. Because that agreement had already automatically renewed, the termination was not effective until July 31, 2010. As a result, PetroDrillBits contacted Nixon, who confirmed that Varel International was terminating its agreement with PetroDrillBits.

On September 17, 2009, "Varel Europe SAS, subsidiary of Varel International, Inc., a corporation, having its principle place of business in Pau, France [], and MMS Holding Group, LLC[,] a Delaware company[,] having its principle place of business in Houston, Texas" executed an agreement for Varel Europe to sell oilfield drill bits to MMS and for MMS to serve as a sales representative of Varel. The agreement was signed by Nixon as an "officer" of "Varel International, Inc."

On September 22, 2009, Nixon sent a letter to PetroDrillBits stating that Varel International was "notifying [PetroDrillBits] that the termination, which will be effective at the end of July 31, 2010, terminates all geographic areas covered by the [a]greement" and "[u]nder the [a]greement, PetroDrillBits is not entitled to a commission for sales that Varel makes to or through MMS." In December 2009, MMS began buying drill bit products directly from Varel.

As expected, the sales to MMS were significant, totaling $2,170,221 through July 31, 2010. Pursuant to the agreement, PetroDrillBits claimed it was entitled to approximately $214,000 in commissions on sales to MMS that occurred before July 31, 2010.

PetroDrillBits filed suit against Varel International and Varel Europe alleging breach of contract, fraud, and conspiracy. However, it subsequently nonsuited its fraud and conspiracy claims. In its fourth amended petition, PetroDrillBits sought, as its breach-of-contract damages, payment of the commissions due under the contract between Varel International and PetroDrillBits. Varel International and Varel Europe generally denied the allegation and asserted several affirmative defenses. Also, Varel International and Varel Europe filed suit against PetroDrillBits asserting claims for breach of contract and misappropriation of trade secrets. The cases were consolidated.

The case was tried to a jury. At the conclusion of the evidence, Varel International and Varel Europe moved for a directed verdict, arguing PetroDrillBits had failed to present evidence that would support a jury question on damages for breach of contract, which the trial court denied. The jury found in favor of PetroDrillBits on its breach-of-contract claim, awarding it damages in the amount of $214,421.32 and attorneys' fees. The jury found against Varel International and Varel Europe on their claims for breach of contract and misappropriation of trade secrets.

Varel International and Varel Europe filed a motion for judgment notwithstanding the verdict, arguing, in part, there was no evidence to support the jury's damages award and, as a matter of law, PetroDrillBits was precluded from recovering attorneys' fees. The trial court signed a final judgment incorporating the jury's verdict, impliedly overruling Varel International and Varel Europe's motion for judgment notwithstanding the verdict. Also, Varel International

and Varel Europe filed a motion for new trial, arguing the evidence was insufficient to support the jury's damages award, which was overruled by operation of law.

## II. SUFFICIENCY OF EVIDENCE

In the first part of issue one and issue two, Varel International and Varel Europe argue the trial court erred when it denied: (1) their objection to the jury charge, and motions for directed verdict, judgment notwithstanding the verdict, and new trial because the evidence is legally insufficient to support the jury's answer to question no. 6, awarding PetroDrillBits damages on its breach-of-contract claim; and (2) their motion for judgment notwithstanding the verdict on the jury's answer to question no. 7 because, as a matter of law, chapter 38 of the Texas Civil Practice and Remedies Code does not allow recovery of attorneys' fees from a limited partnership (L.P.) or a société par actions simplifiée (S.A.S).

### A. Standards of Review

#### 1. Jury Charge

An appellate court reviews a trial court's evidentiary and jury-charge rulings for abuse of discretion. *See Sw. Energy Prod. Co. v. Berry-Helfand*, No. 13-0986, 2016 WL 3212999, at \*21 (Tex. Jun. 10, 2016). In particular, an appellate court reviews a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard. *See* S*hupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). However, whether the trial court erred by applying an improper measure of damages is a question of law that an appellate court reviews de novo. *See Goldman v. Olmstead*, 414 S.W.3d 346, 360–61 (Tex. App.—Dallas 2013, pet. denied); *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 452 (Tex. App.—Dallas 2010, pet. denied).

#### 2. Motion for Directed Verdict

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.—Dallas 2015, no pet.);

*Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 619 (Tex. App.—Dallas 2010, no pet.); *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex. App.—Dallas 2006, no pet.). A directed verdict for a defendant may be proper in three situations: (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery. *See Prudential Ins. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000); *Blackstone*, 470 S.W.3d at 645; *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 398 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting directed verdict also proper when legal principle precludes recovery); *see also Cambio v. Briers*, No. 01-10-00807-CV, 2015 WL 2229274, at *3 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.) (noting directed verdict also proper when legal principle precludes recovery).

If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220–21 (Tex. 2011); *Blackstone*, 470 S.W.3d at 645. To the extent that the trial court's ruling on a directed verdict is based on a question of law, an appellate court reviews that aspect of the ruling de novo. *See JSC Neftegas-Impex*, 365 S.W.3d at 398; *see also Cambio*, 2015 WL 2229274, at *3. To the extent that a trial court's denial of a directed verdict is based on the failure to present evidence raising a fact issue essential to the plaintiff's right of recovery or evidence conclusively establishing a defense to the plaintiff's cause of action, the standard of review is a legal sufficiency or "no evidence" standard of review. *See Blackstone*, 470 S.W.3d at 645; *Mauricio v. Castro*, 287 S.W.3d 476, 478–79 (Tex. App.—Dallas 2009, no pet.). When reviewing a directed verdict, an appellate court considers all the evidence in a light most favorable to the nonmovant, and resolves all reasonable inferences that arise from the evidence admitted at the trial in the nonmonvant's favor. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51

(Tex. 2003); *Blackstone*, 470 S.W.3d at 645; *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied).

### 3. Motion for Judgment Notwithstanding the Verdict

A trial court should grant a motion for judgment notwithstanding the verdict when: (1) the evidence is conclusive and one party is entitled to recover as a matter of law; or (2) a legal principle precludes recovery. *See Blackstone*, 470 S.W.3d at 645; *Iroh v. Igwe*, 461 S.W.3d 253, 261 (Tex. App.—Dallas 2015, pet. denied); *see also* TEX. R. CIV. P. 301. A judgment notwithstanding the verdict is proper when a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Blackstone*, 470 S.W.3d at 645; *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied). Also, the standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for the denial of a motion for directed verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review"); *Blackstone*, 470 S.W.3d at 645–46; *Iroh*, 461 S.W.3d at 261 n.3; *Cambio*, 2015 WL 2229274, at *3 (judgment notwithstanding the verdict also proper when legal principle precludes recovery, which is reviewed de novo); *JSC Neftegas-Impex*, 365 S.W.3d at 398.

### 4. Motion for New Trial

An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard. *See Hodges v. Rajpal*, 459 S.W.3d 237, 250 (Tex. App.—Dallas 2015, no pet.). A trial court abuses its discretion when its actions are arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Hodges*, 459 S.W.3d at 250; *Dernick Res., Inc. v.*

*Wilstein*, 471 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2015, pet. filed); *Miller v. Kennedy & Minshew Prof'l Corp.*, 142 S.W.3d 325, 338 (Tex. App.—Fort Worth 2003, pet. denied). Legal and factual sufficiency are relevant factors to be considered in assessing whether the trial court abused its discretion. *See Dernick*, 471 S.W.3d at 482; *Miller*, 142 S.W.3d at 338. However, an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence, as long as some evidence reasonably supports the trial court's decision. *See Dernick*, 471 S.W.3d at 482–83; *Miller*, 142 S.W.3d at 338.

### B. Breach of Contract Damages

In issue one, Varel International and Varel Europe argue the trial court erred when it overruled their objection to the jury charge, and denied their motions for directed verdict, judgment notwithstanding the verdict, and new trial because the evidence is legally insufficient to support the jury's answer to question no. 6, awarding PetroDrillBits damages on its breach-of-contract claim. Varel International and Varel Europe contend that even though it is undisputed that PetroDrillBits would have incurred costs if it had performed technical services after the sale of the drill bits, PetroDrillBits failed to adduce evidence of those costs. PetroDrillBits responds that the evidence was sufficient for the jury to conclude that: (1) PetroDrillBits provided sales and technical service under the agreement that resulted in sales being made to MMS during the term of the agreement; (2) PetroDrillBits was entitled to commissions on those sales to MMS; and (3) PetroDrillBits was not required to and would not have incurred any additional expenses related to the sales to MMS. Also, PetroDrillBits argues that the evidence shows that it had already incurred the very expenses Varel International and Varel Europe contend would have been incurred if the contract had been performed.

### 1. Applicable Law

A successful breach of contract claim requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See Transitional Entity LP v. Elder Care LP*, No. 05-14-01615-CV, 2016 WL 3197160, at *6 (Tex. App.—Dallas May 27, 2016, no pet.) (mem. op.); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 140 (Tex. App.—Dallas 2012, no pet.). Damages must be measured by a legal standard, and that standard must be used to guide the fact finder in determining what sum would compensate the injured party. *See Transitional Entity*, 2016 WL 3197160, at *6; *Sharifi*, 370 S.W.3d at 148. Damages for breach of contract protect three interests: a restitution interest, a reliance interest, and an expectation interest. *See Sharifi*, 370 S.W.3d at 148; *Chung v. Lee*, 193 S.W.3d 729, 733 (Tex. App.—Dallas 2006, pet. denied).

The ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *See Sharifi*, 370 S.W.3d at 148. By the operation of that rule, a party generally should be awarded neither less nor more than his actual damages. *See Sharifi*, 370 S.W.3d at 148 (citing *Stewart v. Basey*, 245 S.W.2d 484, 486 ( Tex. 1952)). The facts of the case determine the proper measure of damages as well as any allowance offsets. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 n. 1 (Tex.1984); *Sharifi*, 370 S.W.3d at 148; *Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 363 (Tex. App.—Dallas 1993, writ denied).

Generally, the measure of damages in a breach-of-contract action is the loss of the benefit of the bargain, which would put the complaining party in as good a position as if the contract had been performed. *See Transitional Entity*, 2016 WL 3197160, at *6; *Goldman*, 414 S.W.3d at 360–61. Benefit-of-the-bargain damages serve to protect the promisee's "expectation interest,"

or his interest in having the benefit of his bargain by being put in as good a position as he would have been had the contract or promise been performed. *See Transitional Entity*, 2016 WL 3197160, at \*6; *Bechtel Corp. v. CITGO Products Pipeline Co.*, 271 S.W.3d 898, 927 (Tex. App.—Austin 2008, no pet.).

Expectancy damages, similar to benefit-of-the-bargain recoveries, award damages for the reasonably expected value of the contract. *See Sharifi*, 370 S.W.3d at 148. To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it. *See Sharifi*, 370 S.W.3d at 148.

### 2. Application of the Law to the Facts

After the jury answered questions, finding that Varel International and Varel Europe failed to comply with the contract, and their failure to comply was not excused by the conduct of PetroDrillBits, they were asked to determine breach-of-contract damages. Question no. 6 of the jury charge addressed breach-of-contract damages, stating:

> **Question 6**
>
> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [PetroDrillBits] for its damages, if any, that resulted from such failure to comply?
>
> Consider the following element of damages, if any, and none other:
>
> The difference between any amounts owed to [PetroDrillBits] and the expenses that [PetroDrillBits] would have incurred in performing the Sales and Technical Representation Agreement, if any.
>
> Do not add any amount for interest on damages, if any.

The jury awarded PetroDrillBits damages on its breach-of-contract claim in the amount of $214,421.32, the amount it claimed that it was owed in commissions.

The parties dispute focuses on whether PetroDrillBits would have incurred additional expenses if the contract had not been terminated and whether there was sufficient evidence of

–11–

those expenses. On appeal, Varel International and Varel Europe do not challenge the sufficiency of the evidence showing that $214,421.32 was the total amount of commissions due. Rather, Varel International and Varel Europe argue that PetroDrillBits failed to adduce evidence as to the costs it would have incurred if it had performed technical services after the sale of the drill bits. They claim that PetroDrillBits admitted the agreement required it to provide technical services to MMS and there would have been expenses associated with doing so. Conversely, PetroDrillBits contends that, pursuant to the terms of the parties' agreement, it was not obligated to incur any additional expenses after the sales to MMS and there is no evidence it would have done so. Further, PetroDrillBits argues it already incurred the expenses that Varel International and Varel Europe claim should have been deducted from their commissions.

The parties' dispute centers around the following testimony by Leslie Schreiber:

Counsel for Varel: If Mr. Nixon had not sent this letter [terminating the contract], would you have done some work with MMS going forward?

Leslie Schreiber: Yes, I would have.

Counsel for Varel: Okay. And does that include providing technical services to MMS?

Leslie Schreiber: Yes, we offered it.

Counsel for Varel: Okay. And is that the sort of thing that you described earlier today that would have some expenses associated with it?

Leslie Schreiber: Yes.

Also, the record shows that David Schreiber testified PetroDrillBits paid for all of its own expenses, "[Varel] never paid us for anything. [PetroDrillBits] was responsible for all the expenses," and PetroDrillBits spent its money and time bringing in business whether the sale occurred or not, only getting paid a commission if Varel International sold a product. Further, the agreement between PetroDrillBits and Varel International states, in part, that PetroDrillBits:

–12–

(1) "is authorized to provide sales and technical service to [Varel International] for certain customers and countries"; (2) will be paid commissions on "the net selling price of oilfield and mining drill bit products"; and (3) will be responsible for its own expenses."

The record shows that the agreement between Varel International and PetroDrillBits "authorized," but did not require PetroDrillBits to provide "technical service," which is consistent with the testimony of Leslie Schreiber that PetroDrillBits "offered" technical services. Also, the record shows that PetroDrillBits was only to be paid commissions on sales and Varel International made sales of oilfield drill bits to MMS totaling $2,170,221.45. The contract between Varel International and PetroDrillBits provided a schedule for calculating the commissions and the method of calculating the amount of commissions was not disputed at trial. We conclude there was legally sufficient evidence to support the jury's answer to question no. 6, awarding damages to PetroDrillBits. Accordingly, we conclude the trial court did not err when it overruled Varel International and Varel Europe's objection to the jury charge, and motions for directed verdict, judgment notwithstanding the verdict, and new trial.

Issue one is decided against Varel International and Varel Europe.

### C. Attorneys' Fees

In issue two, Varel International and Varel Europe argue the trial court erred when it denied their motion for judgment notwithstanding the verdict on the jury's answer to question no. 7 because, as a matter of law, chapter 38 of the Texas Civil Practice and Remedies Code does not allow recovery of attorneys' fees from a limited partnership (L.P.) or a société par actions simplifiée (S.A.S). Varel International and Varel Europe argue that Varel International is a limited partnership and Varel Europe is organized as a société par actions simplifiée, which is the French equivalent of a limited liability company. They contend that the plain language of section 38.001 allows recovery of attorneys' fees only from individuals and corporations.

–13–

PetroDrillBits responds that there is no evidence that Varel International is a limited partnership because, throughout the trial, it was referred to as "Varel International" without reference to its legal status. Also, PetroDrillBits argues that Varel Europe is an S.A.S., which is a French corporation. Further, PetroDrillBits argues attorneys' fees can be recovered from partnership and limited liability companies under section 38.001 and the literal approach applied by some of the courts of appeals when interpreting section 38.001 violates the rules of statutory construction.

### 1. Applicable Law

Texas follows the American Rule, which provides that litigants may recover attorneys' fees only if specifically provided for by statute or contract. *See Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011); *Choice! Power, L.P. v. Feeley*, No. 01-15-00821-CV, 2016 WL 4151041, at *8 (Tex. App.—Houston [1st Dist.] Aug. 4, 2016, no pet. h.); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452 (Tex. App.—Houston [14th Dist.] 2016, pet. filed); *Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560, 574 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Section 38.001 of the Texas Civil Practice and Remedies Code authorizes an award of attorneys' fees for certain enumerated classes of claims brought by a "person" against "an individual or corporation." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015); *Choice!*, 2016 WL 4151041, at *8; *Alta Mesa*, 488 S.W.3d at 452; *Fleming*, 425 S.W.3d at 574. Under the plain language of section 38.001, a trial court cannot order limited liability partnerships (L.L.P.), limited liability companies (L.L.C.), or limited partnerships (L.P.) to pay attorneys' fees. *See Choice!*, 2016 WL 4151041, at *11 (section 38.001 does not permit recovery against an L.P.); *Alta Mesa*, 488 S.W.3d at 452–55 (section 38.001 does not permit recovery against an L.L.C.); *Fleming*, 425 S.W.3d at 574 (section 38.001 does not permit recovery against an L.L.P.). The availability of attorneys' fees under a particular statute is a question of law for the court. *See Fleming*, 425 S.W.3d at 574.

## 2. Application of the Law to the Facts

The record shows that in its fourth amended original petition, PetroDrillBits identified the defendants as "Varel International Industries, L.P., and Varel Europe, S.A.S." The style of the case is "PetroDrillBits International, Inc. v. Varel International Industries, L.P., and Varel Europe, S.A.S." The agreement that forms the basis of PetroDrillBits' breach of contract claim states that it is between "Varel International Industries, L.P.," and PetroDrillBits. Further, e-mails admitted into evidence show that Leslie Schreiber signed e-mail correspondence as the president of PetroDrillBits "Authorized Representative for VarelInternationalInd., [sic] L.P." The trial court's jury charge includes the following definitions: (1) "'Varel International' is Varel International Industries, L.P.," and (2) "'Varel Europe' is Varel Europe, S.A.S." PetroDrillBits did not object to the inclusion of this definition in the jury charge.

However, Nixon, testified that he is the "president and CEO" of Varel International, which has its "corporate headquarters" in Carrolton, Texas. Also, Nixon stated that Pontneau is the "president" of Varel Europe, which has its "corporate headquarters" in Pau, France. In addition, Nixon stated that he owned 8% of the shares in Varel International until the company was sold in May 2014 and Pontneau owned shares in "Varel." Further, the agreement between Varel Europe and MMS states that "Varel Europe SAS, subsidiary of Varel International, Inc., a corporation, having its principle place of business in Pau, France" and was signed by Nixon as an "officer" of "Varel International, Inc."

Although Varel International and Varel Europe argue a legal principle precludes PetroDrillBits recovery of attorneys' fees, there was conflicting evidence at trial as to the legal status of both Varel International and Varel Europe. As a result, there was a fact issue, so we apply a legal sufficiency standard of review. On this record, we conclude there was legally sufficient evidence to demonstrate that Varel International and Varel Europe are corporations

against whom and award of attorneys' fees is authorized. *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. Accordingly, the trial court did not err when it denied their motion for judgment notwithstanding the verdict on the jury's answer to question no. 7, awarding PetroDrillBits attorneys' fees.

Issue two is decided against Varel International and Varel Europe.

## IV. CONCLUSION

The trial court did not err when it overruled Varel International and Varel Europe's objection to the jury charge, and motions for directed verdict, judgment notwithstanding the verdict, and new trial because there was legally sufficient evidence to support the jury's answer to question no. 6, awarding damages to PetroDrillBits. Also, the trial court did not err when it denied their motion for judgment notwithstanding the verdict on the jury's answer to question no. 7, awarding PetroDrillBits attorneys' fees because there was legally sufficient evidence to demonstrate that Varel International and Varel Europe are corporations.

The trial court's final judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

141556F.P05

–16–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VAREL INTERNATIONAL INDUSTRIES, L.P., AND VAREL EUROPE, S.A.S., Appellants

No. 05-14-01556-CV     V.

PETRODRILLBITS INTERNATIONAL, INC., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-00490.
Opinion delivered by Justice Lang. Justices Brown and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

It is **ORDERED** that appellee PETRODRILLBITS INTERNATIONAL, INC., recover its costs of this appeal and the full amount of the trial court's judgment from appellants VAREL INTERNATIONAL INDUSTRIES, L.P., and VAREL EUROPE, S.A.S., and from FEDERAL INSURANCE COMPANY as surety on appellant's supersedeas bond.

Judgment entered this 30th day of August, 2016.