

# NUMBER 13-19-00530-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

LYLE B. MURPHEY, TRUSTEE OF THE
LYLE BERNHARDT MURPHEY TRUST
UNDER AGREEMENT DATED MAY 2, 2002;
AND LYLE B. MURPHEY, INDIVIDUALLY,                    Appellant,

v.

OLD DOLLAR PROPERTIES, LLC,                    Appellee.

---

On appeal from the 126th District Court
of Travis County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Hinojosa**

We issued our memorandum opinion and judgment in this cause on October 21, 2021. Appellant/cross-appellee Lyle B. Murphey, individually and as trustee of the Lyle Bernhardt Murphey Trust under agreement dated May 2, 2002, has filed a motion for

rehearing. Pursuant to our request, appellee/cross-appellant Old Dollar Properties, LLC (Old Dollar) filed a response to the motion. We deny the motion for rehearing but withdraw our earlier memorandum opinion and judgment and substitute the following memorandum opinion and its accompanying judgment in their place.

Old Dollar[1] sued Murphey for fraud, breach of contract, and violations of the Texas Deceptive Trade Practices Act (DTPA), alleging that Murphey failed to disclose various issues with the septic system when selling a mobile home park to Old Dollar. Following a jury trial, the trial court signed a final judgment awarding $195,500 in damages on Old Dollar's breach of contract claim. In four issues, which we treat as five, Murphey argues: there was insufficient evidence establishing the (1) breach, (2) causation, and (3) damage elements of Old Dollar's contract claim; (4) the trial court's breach of contract instruction was erroneous; and (5) the trial court erred in not awarding Murphey attorney's fees.

In two cross-issues, Old Dollar argues that the trial court erred in failing to: (1) enter judgment on its DTPA claim; and (2) award Old Dollar attorney's fees. We reverse and remand in part and affirm in part.[2]

## I. BACKGROUND

### A. Pleadings

Murphey sold a mobile home park (property) located in Travis County, Texas to Old Dollar. Old Dollar and its owner Richard Smith later sued Murphey alleging that

---

[1] Richard Smith, the owner of Old Dollar, is also named as a plaintiff in the suit. However, he nonsuited his individual claims, and he is not named in the trial court's judgment.

[2] The Texas Supreme Court transferred this case from the Third Court of Appeals in Austin to this Court pursuant to a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001.

Murphey failed to disclose "that the septic system serving the subject property lacked sufficient capacity to accommodate the mobile homes and feed store" on the property. The case proceeded to a jury trial.

**B.     Trial**

Trial evidence showed that, in December of 2015, Smith contacted Murphey about purchasing the property, a four-acre tract of land with sites for eighteen mobile homes and a feed store. The property generated revenue from monthly rental payments from the mobile home owners and the proprietor of the feed store. The property contained private water and septic systems.

During negotiations, Smith asked several questions regarding the septic system, which treated the sewage for the property. Murphey provided Smith with the design for the septic system which was built in 1982. The system contains eleven cascading tanks in which solids settle from the sewage permitting the liquid to flow to a final tank, called the effluent tank. The effluent tank then pumps the liquid sewage underneath the surface of the property's drain field, where the liquids are absorbed in the soil. Murphey informed Smith that he spent approximately $4,500 a year to repair and maintain the septic system. He also told Smith that he paid $12,000 annually for a maintenance man, whose duties included maintaining the septic system. Murphey stated that he cleaned the lines in the drain field every three months, conducted a high-pressure cleaning of the system every two years, and had a vacuum truck remove solid waste from the system every two to three years, a process the parties refer to as "pumping" the septic system.

Following negotiations, Smith and Murphey agreed on a $1 million purchase price. At Smith's request, the sale was divided into two transactions for tax purposes: a $700,000 transaction for the land, and a $300,000 transaction for the water and septic systems. The contracts were executed on February 1, 2016.

The sales contract for the land included several disclosures in which Murphey indicated that the septic system was operational and that there were no known defects in the system. Murphey further indicated that no systems on the property needed repair. Murphey agreed to "pump all septic tanks and replace pressure tanks" prior to closing. An addendum to the sales contract provided that Murphey would convey the water and septic systems to Old Dollar for $300,000.

The parties executed a separate "Bill of Sale," for the purchase of the personal property affixed or attached to the real property, including the water and septic systems. The bill of sale specified that Old Dollar was taking the property "as is" subject to the representations and warranties contained in the purchase contract.

In March of 2016, Travis Hausmann, a neighboring property owner, discovered sewage on his property that was originating from the mobile home park. Hausmann contacted Murphey believing that he still owned the property. Murphey notified Smith of the concern. During their conversation, Murphey told Smith that there was a sump pump located in the effluent tank and that Smith should turn it off. Murphey testified that he told Smith about the pump during one of their meetings prior to the sale and that he only used the pump when necessary to remove rainwater that had accumulated in the tank. Smith denied that such a conversation occurred, stating that he did not learn of the pump until

after sewage was discovered on the neighboring property.

When Smith arrived at the property, he discovered the sump pump, which was connected to a hose. The hose directed the waste from the effluent tank toward a ravine which led to the neighboring property. Concerned that he was directing sewage onto his neighbor's property, Smith had someone remove the pump.

Hausmann testified that he discovered sewage on his property a year prior while Murphey owned the property. He stated that on both occasions that there had been no recent rainfall.

Gary Platzer was called as an expert witness in septic system repairs. He has repaired septic systems for thirty-three years. Both Murphey and Smith were customers of Platzer, who has visited the property around six to seven times. Months before Old Dollar purchased the property, Platzer addressed a backup in the septic system. Platzer stated that the drain field was clogged, preventing sewage from being absorbed by the field. Platzer pulled the caps on the lines in the drain field to release the backed-up sewage. He noticed that a lot of grease and "sludge" came out. Platzer flushed each of the drain field lines, pressurized them, and added treatments. Platzer testified that there was sludge and grease pooling on top of the drain field which indicated that the system was "overfilled." Platzer testified that the septic system was not working properly. He informed Murphey at the time that he had a "grease problem." He also stated that the septic system was undersized for the number of occupants of the property. Platzer explained that with so many residents, the grease and solid waste did not have time to settle as it passed through the septic system. Platzer opined that the drain field needed

5

to be at least double its current size.

Smith contacted Platzer after discovering the sump pump in the effluent tank. Platzer went to the property and observed that the pump was directing sewage from the tank to Hausmann's property, which Platzer believed to be illegal. He stated that a hose was directed down into a "gully." Platzer maintained that any fluid coming from the tank constituted sewage. Platzer stated that Smith must now pump waste from the septic system twice a month to prevent the system from backing up. This costs Smith $1,100 per month. Platzer testified that expanding the drain field to the appropriate size would be a reasonable and necessary expense.

Wayne Dolezal was called as an expert witness concerning septic systems in general. Dolezal has been installing septic systems for thirty-five years. He testified that if a septic system is working properly, there would never be a need to pump fluid from the effluent tank onto the surface. He stated that the tank should be watertight and should never have rainwater within it. Dolezal stated that rainwater can saturate the drain field preventing it from absorbing sewage. Dolezal recommended that Smith build a berm around the field to prevent runoff. Dolezal agreed that the drain field needed to be doubled in size for the septic system to be operational. He stated that pumping the system twice a month was only a temporary remedy.

Smith testified that, in addition to incurring expenses for pumping, he has spent money to build a berm next to the drain field as recommended by Dolezal. Smith stated that he plans to expand the drain field, which would require that he remove two mobile home sites and reduce his monthly revenue by $930. Smith testified that if he expands

6

the drain field he would suffer $233,315 in damages over the ten years he plans to own the property. This calculation includes the cost to expand the drain field, which Dolezal estimated would range between $75,000 and $100,000, the accumulated expenses to keep the system operational, and the lost revenue from removing two mobile home sites. Smith stated that it would cost him $210,415 over the next ten years to maintain the septic system without expanding the drain field. Smith introduced checks and invoices to demonstrate the expenses he had incurred to date. Smith also speculated that the septic issues reduced the property's market value by 20%.

Gary Hoffman, the owner of the feed store on the property, testified that during the period Murphey owned the property he observed sewage on the surface of the drain field every two or three months. Hoffman stated that he had to shut the doors of the feed store because of the smell.

Murphey testified that he only used the sump pump in the effluent tank three times in the twenty years he owned the property. Murphey maintained that he showed the sump pump to Smith and explained its purpose. Murphey testified that it was important to encourage residents to limit their water usage so that the septic system would not be overburdened. Murphey stated that he pumped the entire system annually unless there was a lot of rainfall. He believed that the septic system worked properly for him while he owned the property.

## C. Jury Charge & Verdict

At the charge conference, Murphey objected to Question 1 which asked: "Did [Murphey] fail to comply with the agreement(s) for the purchase of the Property, if any?"

Murphey further objected to the following definition in the charge: "The 'Property' means the mobile home park located at 21120 West S.H. 71, Spicewood, Texas." Murphey argued that the definition and the question were "inadequate because [they were] overly broad in taking the two transactions . . . and combining them into one transaction by the interplay between [the defined term] and the use of the term 'agreements'. . . ." The trial court overruled the objection.

The jury answered yes to Question 1, thereby finding that Murphey failed to comply with the agreements for the purchase of the property. The jury also answered yes to Question 2 which asked whether Murphey "engage[d] in any false, misleading, or deceptive act or practice that [Old Dollar] relied on to its detriment and that was a producing cause of damages to [Old Dollar]." However, it found that Murphey did not engage in such conduct knowingly or intentionally. The jury also found that Murphey did not commit statutory fraud. The jury found that Old Dollar sustained $24,500 in past damages "to address the septic system problems," and that Old Dollar would in reasonable probability sustain $171,000 in damages "in the future to address the septic system problems[.]" The jury assessed no damages due to the diminution of the market value of the property as the result of the septic system problems.

## D.    Bench Trial—Attorney's Fees

Next, the trial court held a bench trial on the parties' competing claims for attorney's fees. Old Dollar's counsel, Gary A. Calabrese, requested that the trial court award $69,000 in attorney's fees as well as conditional appellate attorney's fees, and testified in support of his request. Murphey's attorney, Kim Brown, submitted an affidavit detailing

8

his time on the case supported by his resume and itemized billing statements.

The trial court took the matter under advisement. It later issued findings of fact and conclusions of law, stating that "[t]he evidence is insufficient to support an award of attorney's fees in any amount."

## E. Post-Trial Motions & Judgment

Murphey filed a motion for judgment on the verdict, or in the alternative, notwithstanding the verdict, arguing that Old Dollar should take nothing on its claims based on the jury's findings. The trial court signed a final judgment awarding Old Dollar $195,500.00 for its breach of contract claim; however, the judgment stated that Old Dollar "shall take nothing" on its DTPA claim. The trial court did not award attorney's fees. Old Dollar filed a motion for new trial and to modify or reform the judgment, arguing that the trial court erred in failing to award attorney's fees. Murphey filed a motion to modify the judgment or, in the alternative, for a new trial, raising various challenges to the sufficiency of the evidence, and arguing that Murphey was entitled to attorney's fees. The motions were overruled by operation of law. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his first three issues, Murphey challenges the legal and factual sufficiency of the evidence supporting the jury's breach of contract and damages findings.

## A. Standard of Review

Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the challenged finding,

9

indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not. *Id*. at 822. Evidence is legally insufficient to support a disputed fact finding when (1) evidence of a vital fact is absent, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810.

"When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged finding." *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Law. Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819. Jurors are free to credit one witness's testimony and disbelieve another's, and appellate courts cannot overturn a jury's verdict merely because we might reach a different result. *Id.* Therefore, to give proper deference to the jury's role as factfinder, we assume that the jury resolved all conflicts of credibility in favor of its verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence if a reasonable juror could have

10

disbelieved it. *Id.*

## B. Applicable Law

To prove a breach of contract claim, a plaintiff must establish (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) the defendant breached that contract, and (4) damages resulting from the breach. *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App.—Dallas 2020, no pet.). The damages element for this claim includes a causation requirement. *Houle v. Casillas*, 594 S.W.3d 524, 556 (Tex. App.—El Paso 2019, no pet.).

## C. Breach

In his first issue, Murphey argues that there is legally insufficient evidence that Murphey breached the disclosure provisions of the parties' agreements based on the jury's findings that Murphey did not commit fraud and did not knowingly or intentionally deceive Old Dollar. As argued by Murphey, the seller's disclosures in the agreement are limited to what a seller is "aware of." Therefore, Murphey maintains that there can be no breach of the contract's disclosure requirements based on the jury's findings that there was no purposeful deception.[3]

Although couched as a sufficiency issue, Murphey complains about a conflict in

---

[3] Pursuant to the contracts, Murphey agreed to take the property in its present condition or "as is." However, an "as is" clause that is induced by specific misrepresentations about the condition of property will not shield the seller from liability. *Williams v. Dardenne*, 345 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995); ("A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is,' and then disavow the assurance which procured the 'as is' agreement."); *see also Pairett v. Gutierrez*, 969 S.W.2d 512, 517 (Tex. App.—Austin 1998, pet. denied) (reversing summary judgment on basis of "as is" clause when there was evidence that seller knew of home's foundation problems but affirmatively represented to buyer that they were not aware of any foundation problems).

the jury's answers. Particularly, Murphey maintains that the jury's affirmative breach of contract finding conflicts with its negative findings regarding fraud and whether his deception was knowing or intentional. Texas Rule of Civil Procedure 295, entitled "Correction of Verdict," provides that if a jury's answers "are in conflict," the trial court must give the jury written instructions regarding the nature of the conflict "and retire the jury for further deliberations." TEX. R. CIV. P. 295. But to preserve error in this regard, "the appellant must object to the conflict or inconsistency before the jury is discharged." *Norwest Mortg., Inc. v. Salinas*, 999 S.W.2d 846, 865 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied); *see USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 516–17 (Tex. 2018); *see also* TEX. R. APP. P. 33.1(a). Because Murphey failed to object to the jury's inconsistent findings in the trial court before the jury was discharged, he has failed to preserve this argument. Other than pointing out the alleged conflict in the jury's verdict, Murphey does not argue that there is insufficient evidence supporting a finding that Murphey knew of, but failed to disclose, issues with the septic system. Further, because such a finding supports the jury's breach of contract verdict, we need not address Murphey's arguments that there is legally insufficient evidence that he breached the agreements by other means. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). We overrule Murphey's first issue.

## D.    Causation & Damages

We address Murphey's second and third issues together. In his second issue, Murphey argues that there is legally and factually insufficient evidence that any breach

by Murphey caused Old Dollar damages. Specifically, Murphey maintains that there is no evidence that Old Dollar suffered any pecuniary loss as a result of purchasing the property. In his third issue, Murphey argues that there is legally and factually insufficient evidence to support the amount of damages awarded by the jury. Murphey asserts that Old Dollar failed to show that the repair expenses were reasonable and necessary and that such expenses cannot be awarded as damages because they exceed the diminution in property value.

###    1.    Applicable Law

As noted previously, the damages element for a breach of contract action includes a causation requirement. *Houle*, 594 S.W.3d at 556. Specifically, the evidence must show that the damages are the "natural, probable, and foreseeable consequence" of the defendant's conduct. *Id.* "A plaintiff may not recover breach-of-contract damages if those damages are remote, contingent, speculative, or conjectural." *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App.—Fort Worth 2015, no pet.). The absence of a causal connection between the alleged breach and the damages sought will preclude recovery. *Id.*

The normal measure of damages in a breach of contract case is the expectancy or benefit of the bargain measure. *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Mays*, 203 S.W.3d at 577.

13

"Under the benefit of the bargain measure, lost profits on the bargain may be recovered if they are proved through competent evidence with reasonable certainty." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148–49 (Tex. App.—Dallas 2012, no pet.). Opinions or estimates of lost profits must be based on objective facts and data. *Id*. at 149. "[T]o recover damages for the costs of repairs to property, a plaintiff must show that the cost of repairs was reasonable and necessary." *Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 42 (Tex. App.—El Paso 2017, pet. denied).

### 2. Analysis

Old Dollar presented evidence that it expected a functioning septic system based on the seller's disclosures in the contract. Old Dollar's expenditures to ensure the septic system was working properly are a natural, probable, and foreseeable consequence of Murphey's failure to disclose the system's defects. *See Houle*, 594 S.W.3d at 556*.*

Furthermore, the damages found by the jury were necessary to restore Old Dollar to the economic position it would have occupied had it purchased the property with a functioning septic system. *See Mays*, 203 S.W.3d at 577. For instance, the jury's award of $24,500 in past damages is supported by evidence that Old Dollar was required to pump the septic system twice monthly and build a berm to prevent rain runoff from flowing into the drain field. These costs were supported by checks, invoices, as well as the testimony of Old Dollar's experts that these were reasonable and necessary expenditures to prevent the septic system from backing up. *See Belanger*, 545 S.W.3d at 42. We disagree with Murphey that the jury's award of past damages improperly incorporates all maintenance costs for the septic system, rather than the "incremental amount of

14

maintenance costs" that were needed to address the problems. Rather, the record reflects that the increased pumping frequency and building of a berm are not expected maintenance costs associated with a functioning system.

The jury's award of $171,000 in future damages was supported by evidence that Old Dollar must expand the drain field to permanently address the septic system deficiencies, which Old Dollar's experts deemed to be a reasonable and necessary solution.[4] *See id.* Dolezal, who has installed septic systems for thirty-five years, estimated that this will cost between $75,000 and $100,000. *See Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 641 (Tex. App.—Austin 2012, no pet.) (explaining that a jury can infer the reasonable cost of repair from an objective valuation of services such as a bill, receipt, or an estimate); *Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.) (concluding that an estimate for repairing a home's foundation was sufficient evidence of cost of the repair). Smith also testified that Old Dollar will incur $9,900 in pumping costs in the next nine months until the drain field is expanded.

There was also evidence that the expansion of the drain field will result in the removal of two mobile home sites and lost profits over the ten years Old Dollar intends to hold the property. Old Dollar presented evidence that its expected revenue for the two mobile home sites would be $110,000 for the next ten years based on a monthly rental rate of $465. There is further evidence that the mobile homes on the property had a 3%

---

[4] Murphey argues that Old Dollar will not sustain damages by expanding the drain field because Platzer testified that the improvement will "pay for itself." We disagree. As a result of the defective septic system, Old Dollar was faced with either perpetual additional repair costs or the costs associated with expanding the drain field, neither of which would have been necessary had the septic system been functioning properly. The jury could have reasonably interpreted Platzer's statement as simply recognizing Old Dollar's options.

15

historical vacancy rate and that the expense ratio for the property ranged between 35 to 50% of gross revenue.[5] This evidence indicates that Old Dollar will sustain as much as $69,355 in lost profits as a result of expanding the drain field. This calculation is based on objective data regarding the expected monthly rental payments from the two sites and associated expenses. *See Sharifi*, 370 S.W.3d at 150.

While we are unable to recreate the precise amount of the jury's award, our review does not require such exactness. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 126 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Evidence corresponding to the exact amount found by the trier of fact is not essential."). Rather, "[a] jury has broad discretion to award damages within the range of evidence presented at trial." *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 330 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (quoting *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 408 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). Deferring to the jury's broad discretion to determine the amount of damages, we conclude that its award of $171,000 in future damages is within the range of evidence. *See id*.

For the foregoing reasons, we hold that the evidence would enable reasonable and fair-minded people to find damages in the amount awarded by the jury and that those damages resulted from Murphey's breach of the parties' agreements. *See City of Keller*, 168 S.W.3d at 827. We also hold that the jury's findings are not so contrary to the

---

[5] These historical figures were provided by Murphey to Smith. *See Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 713 (Tex. App.—Fort Worth 2015, no pet.) (concluding that evidence of past profits may be used to forecast future profits); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 150 (Tex. App.—Dallas 2012, no pet.) (concluding that there was sufficient evidence of future lost profits based on the testimony of the owner of the business as to his past profits).

16

overwhelming weight of the evidence as to be clearly wrong and unjust. *See Bennett*, 489

S.W.3d at 66.[6]

We overrule Murphey's second and third issues.

### III.   CHARGE ERROR

In his fourth issue, Murphey argues that the jury charge erroneously failed to

distinguish between the the sales contract and the bill of sale.

### A.   Standard of Review & Applicable Law

"A trial court has considerable discretion to determine proper jury instructions, and

we review a trial court's decision to submit or refuse a particular instruction for an abuse

of discretion." *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018). A trial court must submit

jury questions, instructions, and definitions that "are raised by the written pleadings and

the evidence." TEX. R. CIV. P. 278; *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463,

469 (Tex. 2017). When we review alleged error in a jury submission, we consider "the

pleadings of the parties and the nature of the case, the evidence presented at trial, and

the charge in its entirety." *United Scaffolding*, 537 S.W.3d at 469 (quoting *Columbia Rio*

*Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009)).

### B.   Analysis

---

[6] Murphey also argues that Old Dollar cannot recover damages related to the septic system because there was no evidence of a loss in the market value to the property. Murphey relies on the "economic feasibility exception" which provides that the cost to repair a temporary injury to real property cannot be recovered as damages when the cost exceeds the loss in the land's value due to the injury. *See ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 540 (Tex. 2017). Assuming, without deciding, that there was no evidence of a loss to the land's value, we note that the damages awarded by the jury were not based on a temporary injury to real property but were contract damages intended to restore Old Dollar to the economic position it would be in had the contract not been breached. Therefore, the economic feasibility exception does not apply.

17

Murphey argues that the terms of the two contracts are materially different; therefore, the trial court erred in submitting a single breach question. We disagree.

As noted above, the purchase of the property was governed by two contracts—the sales contract and the bill of sale. However, the sales contract and the bill of sale each reference the other. For instance, the sales contract provides in an addendum that Murphey will convey the water and septic systems for $300,000 and that the sale would "close in conjunction with said property." The contract's disclosures specifically reference the sewage and septic systems, and the bill of sale incorporates those disclosures. In particular, the bill of sale provides that Old Dollar is not relying on any information "other than [Old Dollar's] inspection and the representations and warranties expressly contained in the purchase contract[.]"

"When a document is incorporated into another by reference, both instruments must be read and construed together." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.). Because the bill of sale incorporates the land contract's disclosure provisions, the contracts must be read and construed together. *See id*. Therefore, we conclude that the trial court did not abuse its discretion in overruling Murphey's objection to the jury charge. *See McCoy*, 554 S.W.3d at 675. We overrule Murphey's fourth issue.

## IV.    DTPA

In its first cross-issue, Old Dollar argues that the trial court erred in failing to enter judgment on the jury's finding that Murphey violated the DTPA. Murphey responds that Old Dollar was not entitled to recover on its DTPA claim as a matter of law because the

18

total consideration of the parties' transaction exceeded $500,000, an argument Murphey raised in his motion for judgment notwithstanding the verdict. In declining to enter judgment on the jury's DTPA finding, the trial court implicitly granted Murphey's motion for judgment notwithstanding the verdict.

"We review a trial court's decision to grant or deny a motion for a directed verdict and a motion for JNOV under the legal sufficiency standard of review." *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 594 (Tex. App.—Dallas 2015, pet. denied). The DTPA generally allows a consumer to sue for damages caused by certain "false, misleading, or deceptive act[s] or practice[s]." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1). However, the statute does not apply to "a cause of action arising from a transaction, a project, or set of transactions relating to the same project, involving the total consideration by the consumer of more than $500,000." *Id*. § 17.49(g). The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA. *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 473–74 (Tex. App.—Fort Worth 2004, no pet.); *see also AES Valves, LLC v. Kobi Int'l, Inc.*, No. 01-18-00081-CV, 2020 WL 1880781, at *5 (Tex. App.—Houston [1st Dist.] Apr. 16, 2020, pet. filed) (mem. op.).

Old Dollar's $1 million purchase exceeds the $500,000 limit imposed by the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.49(g). As such, the statutory claim is unavailable to Old Dollar as a matter of law. Therefore, the trial court did not err in granting Murphey's motion for judgment notwithstanding the verdict. *See Joachim*, 468 S.W.3d at 594; *East*

19

*Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 821 (Tex. App.—Fort Worth 2007, pet. denied) (holding that trial court did not err in granting summary judgment when transaction exceeded $500,000 limit of DTPA). We overrule Old Dollar's first cross-issue.

## V. ATTORNEY'S FEES

### A. Murphey

In his fifth issue, Murphey argues that if he prevails in this appeal and we render judgment in Murphey's favor, then he is entitled to attorney's fees. However, we have not sustained any of Murphey's issues. Therefore, we must necessarily overrule Murphey's fifth issue.

### B. Old Dollar

In its second cross-issue, Old Dollar argues that the trial court erred in failing to award attorney's fees because it presented sufficient evidence that its requested fees were reasonable and necessary.

#### 1. Standard of Review & Applicable Law

To secure an award of attorney's fees, the prevailing party must prove that: "(1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Here, the sales contract provided that if a party prevailed "in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties . . . reasonable attorney's fees."

20

The Texas Supreme Court has instructed that "the lodestar analysis [should] apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id*. at 498. Under this analysis, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id*. The fee applicant at a minimum must present evidence of: "(1) [the] particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id*. at 499. "[O]ther considerations may justify an enhancement or reduction to the base lodestar; accordingly, the fact finder must then determine whether evidence of those considerations overcomes the presumption and necessitates an adjustment to reach a reasonable fee." *Id*. at 501. "[B]illing records are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id*. at 502 (emphasis in original). "General, conclusory testimony devoid of any real substance will not support a fee award." *Id*. at 501.

## 2.    Analysis

Old Dollar's counsel, Gary A. Calabrese, testified that he has been practicing primarily in general litigation since 1983. He stated that he was retained by Old Dollar at

21

the hourly rate of $275, which he maintained was a reasonable rate based on his experience. Calabrese testified that he was retained before litigation commenced and engaged in presuit mediation which was unsuccessful. Calabrese estimated that he had spent "just a little over 250 hours of time" on the case since its inception, which Calabrese maintained were necessary. Calabrese testified that in preparing for trial, he had many interviews with his client, reviewed hundreds of pages of exhibits, reviewed and propounded discovery, drafted pleadings, took depositions, and interviewed witnesses. Old Dollar did not submit any billing or time-keeping records detailing these tasks. Old Dollar requested that the trial court award $69,000 in attorney's fees through trial as well as conditional appellate attorney's fees. The trial court concluded as a matter of law that Old Dollar's evidence was legally insufficient to support an award of attorney's fees.

In *Rohrmoos* and its predecessor cases, testimony regarding attorney's fees was deemed too general because the attorneys provided the amount of time spent on the case in the aggregate but did not indicate how the aggregated time was "devoted to any particular task or category of tasks." *Id*. at 495 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012)); *see*, *e.g.*, *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam) (reiterating basic proof required for lodestar calculation). In *El Apple*, for example, the attorneys did not present time records or other documentary evidence, instead basing their time estimates "on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial." 370 S.W.3d at 763. The supreme court determined that because the trial court lacked evidence of how many hours each task required, it could

not determine whether that time was reasonable, concluding that "[w]ithout at least some indication of the time spent on various parts of the case, a court has little basis upon which to conduct a meaningful review of the fee award." *Id*. Old Dollar's testimony is similarly defective in that, although Calabrese gave an overall estimate of hours worked, there is no evidence regarding how many hours various tasks required. *See id*. Therefore, the trial court did not err in concluding that there was insufficient evidence to support an award of attorney's fees.

However, "an award of no fees [is] improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value." *Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009) (per curiam). Although the evidence was legally insufficient to establish an award of fees under the lodestar method, the evidence did establish that the attorney's services were needed and of some value. *See id*. Further, where evidence fails to satisfy the lodestar standard regarding the details of the work performed, the proper remedy is to remand the issue for a redetermination of fees. *See Rohrmoos*, 578 S.W.3d at 505 (reversing and remanding for redetermination of attorney's fees where evidence was legally insufficient to establish amount of fees); *Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014) (per curiam) (reversing and remanding where "no legally sufficient information support[ed] the amount of attorney's fees the trial court awarded"); *Montano*, 414 S.W.3d at 736–37 (Tex. 2013) (per curiam) (reversing and remanding where party's attorney's fee testimony lacked the level of detail required by *El Apple*); *El Apple*, 370 S.W.3d at 764 ("Because the affidavits and other evidence in this

23

case did not provide [legally] sufficient information for a lodestar calculation, we must reverse and remand."). Therefore, we must reverse that part of the trial court's judgment awarding no attorney's fees and remand for a redetermination of fees consistent with this Court's opinion. We sustain in part Old Dollar's second cross-issue.

## VI. CONCLUSION

We reverse that part of the trial court's judgment awarding no attorney's fees to Old Dollar and remand the cause to the trial court for a redetermination of fees. We affirm the remainder of the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed on the
3rd day of February, 2022.